Elkins v. Camden and Atlantic Railroad Co.

WILLIAM L. ELKINS

*v.*

THE CAMDEN AND ATLANTIC RAILROAD COMPANY et al.

1. After the issue of common stock by a railroad company, a supplement to its charter was passed, which authorized the issue of preferred stock, on the following conditions: " That when so issued, * * * . the holders thereof, respectively, shall be entitled to receive dividends on the same, not to exceed seven per centum per annum, before any dividend shall be set apart or paid on the other and ordinary stock of said company." In some years, dividends of seven per cent. or less were declared on the preferred stock alone, and in

other years, such dividends were declared on both the preferred and common stock.—*Held*, that a holder of the preferred stock was not entitled to annual dividends thereon at a fixed rate, but only to dividends out of the annual profits, but when such profits had been earned, he was entitled to a dividend of seven per cent. therefrom, before any dividend could be paid on the common stock.

2. The silence or failure of a former owner of such preferred stock to object to the declaring of any dividends on the common stock until after he had been paid seven per cent. on his own, will not estop the present owner thereof from asserting his claim to re-imbursement to that extent out of the future profits.

On application for an injunction. Heard on bill and affidavits and answer and affidavits and order to show cause.

*Mr. David J. Pancoast* and *Mr. Samuel H. Grey*, for complainants.

*Mr. Peter L. Voorhees* and *Mr. B. Williamson*, for defendants.

VAN FLEET, V. C.

The defendants in this suit are the Camden and Atlantic Railroad Company and its thirteen directors. The object of the suit is to restrain the defendants from doing two things: First, from paying a dividend on the ordinary stock of the company until the full amount of dividend due on the preferred stock has been paid; and second, from issuing any additional stock, either ordinary or preferred.

The defendant corporation was chartered in 1852, with a capital of $500,000, and liberty was given to increase its capital to $1,500,000. The capital was divided into shares of $50 each. The road was opened for traffic in July, 1854. Shortly after the corporation commenced business it was found to be so much embarrassed financially as to require legislative aid. On the 7th of February, 1856, a supplement to the charter was approved, authorizing the corporation to issue the additional stock of $1,000,000 which it had liberty to issue under its charter as preferred stock, the shares to be the same in amount as the ordi-

nary stock. In defining the rights of the holders of the pre-
ferred stock, the supplement declares :

"That when so issued and declared to be preferred stock, the holders
thereof respectively shall be entitled to receive dividends on the same *not to
exceed seven per. centum per annum*, before any dividend shall be set apart or
paid on the other and ordinary stock of said company."

Of the twenty thousand shares of preferred stock so author-
ized to be issued, seventeen thousand six hundred and thirteen
have been issued, aggregating a value at par of $880,650, and
leaving unissued two thousand three hundred and eighty-seven
shares. Of those issued, the complainant holds seven thousand
eight hundred shares, worth, at par, $390,000. Of the ten
thousand shares of ordinary stock which the defendants were
authorized to issue, seven thousand five hundred and forty-eight
have been issued, representing a capital, at par, of $377,400,
and leaving unissued two thousand four hundred and fifty-two
shares. Of the ordinary stock, the complainant holds two thou-
sand six hundred and forty-six shares, worth, at par, $132,300.
Of the total capital of the corporation of $1,258,050, the com-
plainant holds $522,300. The answer says that he has acquired
all his stock since the 10th day of February, 1882.

No dividends were declared on either class of stock until 1872.
In that year a dividend was declared on the preferred stock, but
none on the ordinary stock, and the same thing was done again
in 1873. In 1874 a dividend of seven per cent. was declared
on the preferred stock, and three and one-half per cent. on the
ordinary stock. But from that date on until November 1st,
1879, dividends of exactly the same per centum, or at the same
rate, were declared at the same time on both classes of stock.
On the date last named, another dividend was declared on the
preferred stock, but none on the ordinary stock; and in April,
1880, a dividend of the same amount, payable in preferred stock,
was declared on both classes of stock. No dividend since then,
until the one in question, has been declared. On the 21st of
September, 1882, the directors declared a dividend of four per
cent. on the preferred stock, and three per cent. on the ordinary

stock.   The complainant insists that this action of the directors,
so far as it seeks to appropriate a part of the profits to the pay-
ment of a dividend on the ordinary stock before he has received
seven per cent. on his preferred stock, not only for the last cur-
rent year, but for each year since the issue of his stock, is a
violation of his rights, which should be enjoined.   This consti-
tutes his first title to relief.

There are certain legal principles pertinent to this discussion
which I think are so firmly established that they may be taken
for granted, without argument or the citation of authorities:
First, stockholders are not creditors, and until the winding
up of the corporation, are entitled to nothing from it but a
distribution of its net earnings; second, dividends can only
be paid out of profits; third, calling stock preferred stock does
not, *per se*, define the rights of such stock, but in order to
determine in what respect the holder of such stock is to be pre-
ferred to the holder of ordinary stock, resort must be had to the
statute or contract under which it is issued; and, fourth where
the statute or contract under which preferred stock is issued, de-
clares or promises that the holder of such stock shall receive a
dividend of a fixed and certain rate per annum, without limiting
the annual sum to be paid as dividend to profits earned or made
within a designated period—as, for example, that he shall receive
a dividend of seven per cent. per annum before any dividend
shall be paid on the ordinary stock—there the preferred stock-
holder is entitled to seven per cent. per annum from the date of
the issuing of the stock held by him, whether profits sufficient
to pay him each year are made or not; and if, at the first divi-
sion of profits, sufficient shall not have been made to pay him
the whole sum due, he may carry the arrears due him over to
the next dividend, and continue to do so until he has received
the whole sum due him, calculated at seven per cent. per annum
from the date of the issue of the stock held by him.   The prin-
ciple last stated rests mainly on English adjudications, and has
in that country received the approval of such judges as Lord
Cranworth, Lord Hatherly, Lord Justice Knight Bruce and
Lord Justice Turner.   The cases in which it has been enun-

Elkins v. Camden and Atlantic Railroad Co.

ciated are *Henry* v. *Great Northern Railway Co., 3 Jur. (N S.) 1117; S. C. on appeal, 1 De G. & J. 606; Crawford* v *North Eastern Railway Co., 3 Jur. (N. S.) 1093; Sturge* v. *Eastern Union Railway Co., 7 De G. M. & G. 158; Matthews* v. *Great Northern Railway Co., 5 Jur. (N. S.) 284.* The doctrine of all these cases, on the point under consideration, was approved in *Boardman* v. *Lake Shore and Michigan Southern Railroad Co., 84 N. Y. 157.*

Two of the English judges liken the case to a partnership agreement, where two of three copartners agree that the third shall, out of the profits of their ventures, have a certain fixed per centum per annum on his capital, before any part of the profits are payable to them. And they both hold that in such case, there being no agreement that what is payable to the third should be paid out of the profits made during the current year, or any other designated period, it would be clear that he would have a right, at all times, to say to the other two, "I have not received the five per cent. or ten per cent. per annum on my capital which, by the terms of our agreement, I am entitled to, and, until I get it, not a farthing of the profits can go to you."

The construction given by the English courts to such statutes and contracts rests, principally, on the fact that they plainly provide for the payment of a dividend at a fixed rate each year, and do not attempt to limit or restrict the dividend which the preferred stock shall be entitled to, to the profits of the year in which the right to the dividend accrues. The great distinction between the two classes of stock seems to be this: ordinary stock is not entitled to a dividend until sufficient profits to warrant a division of profits have been earned, but preferred stock, issued under a statute containing a provision that a dividend of fixed amount shall be paid each year, is entitled to a dividend each year at the stipulated rate, even if no profits are made, but the holder of such stock cannot compel the payment of his dividend until the corporation has a fund on hand which can properly be regarded as profit.

Now, it will be observed, that the statute under which the preferred stock held by the complainant was issued, makes no

provision for the payment of an annual dividend at a fixed and certain rate; indeed, I think it may well be doubted whether it makes provision for the payment of an annual dividend at all, except profits exist sufficient to warrant the payment of a dividend. Dividends, as already remarked, can only be paid out of the profits. The statute under consideration says that the preferred stock shall be entitled to receive a dividend, *not exceeding* seven per cent. per annum, before any dividends shall be paid on the ordinary stock. But suppose no profits are made for three or five years after the issue of the stock, is the preferred stockholder entitled to dividends during that period? if so, at what rate? and who is to fix the rate? and on what principle is the rate to be fixed? In ordinary cases the directors of a corporation are charged with the duty of declaring dividends, and in the performance of that duty they must have regard to the amount of the profits, and also to the sum necessary to be reserved out of the profits to meet contingencies, and to be expended in repairs and improvements. In case there are no profits, it is clear they have no power to declare a dividend. It is equally clear that no rate is fixed by this statute. It would seem, therefore, to be certain, as a matter of logic, that no right to a dividend can accrue to the preferred stock until the pecuniary condition of the corporation is such as to render the declaration of a dividend a duty. The maximum of the preferred dividend is specified. It may be seven per cent.; it cannot be more; it may be less, or it may be nothing. No minimum is specified. This being the case, is it not obvious that the legislature meant, and the persons who originally took the stock must be assumed to have understood, that the amount, within the limit prescribed, payable annually in dividends on the preferred stock, would depend wholly upon the amount of profits which, in the proper and judicious management of the affairs of the corporation, could be divided among its stockholders? There is not the slightest warrant for saying that the legislature meant that the preferred stockholder should have seven per cent. per annum on his stock, whether the net earnings which could properly be applied in the payment of dividends were sufficient to

Elkins v. Camden and Atlantic Railroad Co.

give him a dividend at that rate or not; or that if the net earnings of any year were not sufficient to give him a seven-per-cent. dividend, he should have a right to carry any deficiency which might exist over to the next year. On the contrary, the language employed renders it very clear, I think, that what the legislature meant was this: The rights of the preferred stockholder should depend upon the pecuniary condition of the corporation; if there were no profits during the current year, he was not entitled to a dividend; if there were, he was entitled to a preference to the extent of seven per cent.; if the profits were not sufficient to give him seven per cent., he was entitled to a dividend at such rate as they were sufficient to pay, but not to carry any deficiency or arrears over to a subsequent division of profits. In other words, his rights were to be governed and regulated each year by the pecuniary condition of the corporation at the close of the year. .

The conclusive argument against the complainant's claim, that he is entitled to yearly dividends of definite amount, whether profits were made or not, is, that the statute under which he asserts his claim neither promises nor secures to him a dividend of any amount or at any rate, but simply declares that his dividend shall not exceed a certain sum.

Adopting the construction just stated as the rule by which the complainant's rights are to be measured, it is manifest that he is entitled to have that part of the action of the defendants enjoined, which attempts to appropriate part of the net earnings to the payment of a dividend on the ordinary stock before a dividend of seven per cent. has been paid on the preferred stock. If they have profits sufficient to divide seven per cent. on the preferred stock, or any sum less than seven, they are bound, I think, to give it to the preferred stock, and have no right to appropriate anything to the ordinary stock until they have divided seven per cent. to the preferred stock.

I am not required, nor would it be proper, on an intermediate proceeding like that now before the court, to express an opinion respecting the complainant's right to be re-imbursed out of future earnings for such part of the profits as have been improperly

appropriated as against the preferred stockholders, to the payment of dividends on the ordinary stock, further than to say that I do not think that the preferred stock can, by any just use of equitable rules, be held to be precluded or estopped from asserting its right of preference given by the statute simply because the persons who held it at the times those dividends were declared, allowed them to be declared and paid without objection or question. It requires something more than simple silence and non-action, in such a case, to raise an estoppel against the assertion of a right secured by a statute. *Matthews* v. *Great Northern Railway Co., 5 Jur. (N. S.) 284.*

The other ground upon which the complainant asks the protection of the court needs no discussion. He says he has been informed and believes that the defendants intend to issue a part or the whole of the unissued stock, both preferred and ordinary, for the purpose of maintaining themselves in office, and preventing him and those who think as he does from exercising such control over the affairs of the corporation as they are entitled to exercise. To this the defendants answer that while it is true that some months ago the president was authorized by resolution of the board to sell stock of the company at par, they have no such purpose now; that there is no necessity now for any purpose whatever to issue additional stock, and that they have no intention or design to make any further issue. If what they say is true, and the court is bound so to regard it, the complainant is in no danger and needs no protection.

The complainant is entitled to an injunction restraining the payment of the dividend declared on the ordinary stock on the 21st day of September, 1882, until a dividend of seven per cent has been paid on his preferred stock.