Aaron Appleton and William M. Bennett, appellants,

*v.*

American Malting Company et al., respondents.

[Filed March 11th, 1903.]

1. Every corporation, organized under the laws of this state, is required by statute to elect directors annually, and to file, each year, in the office of the secretary of state, within thirty days after the election, a statement containing the name and address of each of such directors. Directors, when elected, hold office for one year, and until their successors are elected and have qualified.—*Held,* that the failure of a corporation to file in the office of the secretary of state, in a given year, a statement containing the names and addresses of the directors who were required to be elected that year, raises the presumption that no election was held during that year, and that the directors whose names appear on the statement last filed in the office of the secretary of state have held over, and still remain in office.

2. By the true construction of the thirtieth section of the Corporation act each member of a board of directors, under whose administration dividends are declared and paid out of the capital stock of the company, is jointly and severally liable, to the corporation, at any time within six years thereafter, to the full amount of such dividend. But any director who was absent when the same was done, or who dissented from the act or resolution by which it was done, may exonerate himself from such liability by complying with the requirements contained in the proviso of the section.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *18 Dick. Ch. Rep. 422.*

*Mr. James E. Howell,* and with him *Mr. John A. Garver, Mr. Victor K. McElheny, Jr.,* and *Mr. William M. Bennett* (of the New York bar), for the appellants.

*Messrs. Corbin & Corbin* and *Mr. A. B. Thacher* (of the New York bar), for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The appellants, who are stockholders of the defendant company, filed their bill to compel the directors of the company, who held office as such from the time of the organization of the company, in September, 1897, up to and including the year 1899, to pay back into the treasury of the company certain dividends paid out by them, during the period named, from the capital stock of the company, in violation of the provisions of section 30 of the Corporation act. The bill was filed by the complainants, not in the assertion of any individual right, but on behalf of the company.

Each of the defendants filed a demurrer to the bill, and, upon a hearing in the court below, a, decree was entered sustaining the demurrers and dismissing the bill. From that decree this appeal was taken.

Two questions are raised by the demurrers:

: *First.* Do the facts exhibited in the bill justify the complainants in instituting this suit without first making demand upon the directors to do so?

*Second.* Does the thirtieth section of the Corporation act impose any liability upon directors who have paid dividends out of capital, except in the event of the dissolution or the insolvency of the company?

In determining the first question, the following facts are material: The bill was filed in March, 1901. The illegal declaration and payment of unearned dividends is alleged to have occurred prior to the 1st day of January, 1900. As an excuse for not, in the first instance, applying to the present

board of directors to prosecute, it is stated in the bill that, according to the *last* report made by the corporation to the secretary of state, in compliance with section 43 of the Corporation act (and filed in his office in the year 1899), a majority of the board, as then constituted, were and are among the individual defendants, against whom relief is sought by the bill. By section 12 of the Corporation act, directors are required to be chosen annually, and are authorized to hold office for one year, and *until others are chosen and qualified in their stead.* The forty-third section of the act requires every corporation to file in the office of the secretary of state, annually, within thirty days after the election of directors, a statement containing the name and address of each of such directors, with the date of their election and of their term of office. *P. L. of 1896 pp. 281, 291.* The fact that the defendant corporation has not filed in the office of the secretary of state any report of election of directors since the year 1899, justifies the conclusion that since then no election has been held by its stockholders, and that those directors who were then chosen held over, under the provision of section 12 of the statute, and were in office at the time of the institution of the suit.

The statement that a majority of the present board of directors were, and are, among the persons against whom relief is sought by the bill, discloses a situation which relieved the complainants from the duty of applying to them to bring suit in the name of the corporation. It is settled, in this state, that such application need not be made when the interest, or bias, of the directors makes it certain that, if it was made, it would be denied; or, if granted, that the litigation following would necessarily be under the direction of persons opposed to its success. *Knoop* v. *Bomrich, 4 Dick. Ch. Rep. 82, 84; S. C. on appeal, 5 Dick. Ch. Rep. 485.*

Another ground upon which the right of the complainant to maintain this action is attacked, is that either they, or those from whom they purchased their stock, participated in the distribution of the illegal dividends, and are for that reason (as it is contended) disqualified from maintaining this suit,

unless and until they return into the treasury of the company so much of the illegal dividends as was paid upon the stock which they hold. But this contention is based upon a misconception of the real situation. The complainants do not bring the suit to establish any right of their own, or because they are personally entitled to the relief sought. They are permitted to sue *ex necessitate rei,* because the interests of those in control of the corporation are hostile to the interests of the corporation itself. Although, on the record, the corporation is a party defendant, yet, in reality, the complainants represent it. Except in name, the suit is an action brought by the corporation; it is maintained solely for its benefit, and the final relief, when obtained, belongs to it and not to the complainants. *Willoughby* v. *Chicago Junction Railway Co., 5 Dick. Ch. Rep. 656, 666.* The fact that the complainants, or those from whom they purchased their stock, participated in the distribution of the illegal dividends, is no bar to the right of the corporation to obtain the relief sought.

Concluding that the facts stated in the bill sufficiently show the right of the complainants to maintain this suit upon behalf of the corporation, we reach the meritorious question raised by the demurrer, and that is whether, by virtue of the provisions of the thirtieth section of the Corporation act, the directors who have participated in the declaration and payment of a dividend out of capital, are liable to the corporation for so doing, except in case of the dissolution or insolvency of the company.

The language of the statute is as follows:

"No corporation shall make dividends, except from the surplus or net profits arising from its business, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of its capital stock, or reduce its capital stock, except according to this act, and in case of any violation of the provisions of this section, the directors under whose administration the same may happen *shall be jointly and severally liable, at any time within six years after paying such dividend, to the corporation and to its creditors, in the event of its dissolution or insolvency,* to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with interest on the same from the time such liability accrued; *provided,* that any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself

Appleton *v.* American Malting Co.·

from such liability by causing his dissent to be entered at large on the minutes of the directors, at the time the same was done, or forthwith after he shall have notice of the same, and by causing a true copy of said dissent to be published, within two weeks after the same shall have been so entered, in a newspaper published in the county where the corporation has its principal office."

The contention of the demurrants, which was sustained by the court of chancery, is that the remedy provided by the statute is solely for the benefit of creditors, and that it can only be availed of in case of the insolvency of the corporation. The argument is that the punctuation. (the insertion of a comma after the word "creditors") shows clearly that this was intended by the legislature to be a winding-up provision, creating a fund for the payment of debts; and that, even if the location of the comma is not to be accepted as controlling, nevertheless a construction which would enable the corporation to compel the directors, for the benefit of its stockholders, to make good a deficit in the capital stock when the stockholders themselves already had in their pockets the whole amount of that deficit, is so unreasonable and inequitable as to require its rejection.

Punctuation,· although usually considered in discovering the purpose of a statute, is never decisive in determining it; on the contrary, it will be entirely disregarded if it be necessary to do so in order to arrive at the real meaning and intent of the lawmakers. *Hammock* v. *Farmer's Loan and Trust Co., 105 U. S. 77; Kinkele* v. *Wilson, 151 N. Y. 277; Cushing* v. *Worrick, 9 Gray 382.* If controlling force be given t the punctuation, and the location of the comma be considered decisive of the legislative intent that the liability should arise only in the event of dissolution or insolvency, still it is not perceived how the statute is to be limited in its scope so as to impose that liability only so far as it is necessary to provide a fund for the payment of debts. The liability is created for the benefit of *the corporation* as well as its creditors. It arises in case of dissolution *or* insolvency, *i. e.,* where there is a voluntary winding up of a solvent corporation as well as when the corporation is wound up *in invitum,* on account of insolvency. If punctuation is to govern in the construction of this statutory provision,

therefore, the situation is this: although the directors are answerable to the corporation for the injury inflicted upon it by the impairment of its capital, yet, the corporation cannot compel them to make good the loss which it has sustained by their illegal act, unless it elects to abandon its business and go into liquidation. A construction which imputes to the legislature the intent to force a solvent corporation into liquidation as a condition of enabling it to recover from its directors the money necessary to make good the impairment of its capital by them, should not be adopted unless such intent is manifest.

If the words of the act, rather than the punctuation, are looked to, the intention of the legislature would seem to be the reverse of that contended for by the demurrants. Reading the statute without regard to punctuation, the legislature has declared that, for the impairment of the capital of the company,

"the directors shall be jointly and severally liable at any time within six years to the corporation and to its creditors in the event of its dissolution or insolvency to the full amount of the capital stock so divided withdrawn paid out or reduced."

The apparent object of the provision is to afford protection equally to the corporation and to its creditors against loss by reason of the illegal act. But the creditors can suffer no injury from it, unless the capital is so impaired as to render the company insolvent. Not so with the corporation. Any impairment of its capital is harmful to it in some degree; the seriousness of the injury depending upon the extent of the impairment. For the full protection of the company the liability of the directors must be absolute; no liability on the part of the directors is required for the full protection of creditors, except in case of the insolvency of the corporation, or possibly in the event of its voluntary liquidation.

The *words* of the statute give this full measure of protection. For disobedience of its mandate, "the directors shall be jointly and severally liable to the corporation and to its creditors in the event of its dissolution or insolvency;" to the corporation, in any event; to the creditors, in the event expressed in the

statute.  In our judgment, the legislature intended, by this pro-
vision, to afford the full measure of protection which the words
provide.

It is argued by the demurrants, as has been already stated,
that the statute, so construed, is grossly unjust and inequitable,
in that it requires the directors to pay into the treasury of the
corporation, for the benefit of the stockholders, the amount of
the deficit, although the stockholders, not the directors, have
in their pockets the portion of the capital which has been
withdrawn.  The argument assumes that there will be no transfer
of the stock of the company during the period of the liability of
the directors.  The assumption is unwarranted.  The very decla-
ration of the dividend, evidencing, as it does, the apparent
prosperity of the company, creates a desire on the part of out-
siders to become holders of the stock.  It, at the same time,
decreases the actual, while increasing the apparent, value of
the stock.  The result is to afford unscrupulous directors, and
stockholders who are cognizant of the illegal action of the board,
an opportunity to unload their holdings upon innocent pur-
chasers at fraudulently inflated prices.  It is eminently just that
the persons, whose wrongful act has caused loss to those who
have been induced by it to become stockholders, should make
good that loss.  Nor is it inequitable that stockholders who have
innocently participated in the distribution of the illegal divi-
dends should have their stock restored to its normal value by
contribution from the directors who have impaired the capital,
without being first required to pay back the dividend so paid
to them.  The ordinary purchaser of corporate stock holds it as
an investment.  He rightly considers and treats the dividends
paid upon it as income.  In many instances the income is re-
quired to meet the expenses of living, and is entirely expended
for that purpose.  To say that a person who has been unwittingly
induced to exhaust his principal, by the mistaken or fraudulent
representation of those to whom he has entrusted it that what
has been paid to him as income, suffers no injury, is absurd.
To refuse him redress, except upon condition that he return the
moneys which he has expended in the belief that his capital was

intact—notwithstanding that by such expenditure he is rendered penniless—is to put a premium upon fraud in corporate management.

The learned vice-chancellor, who heard the case in the court below, considered that if the statute fixed liability upon the directors without regard to the financial condition or needs of the corporation, then it was highly penal in its character, and that for this reason a court of equity should refuse to entertain a suit for its enforcement. In our opinion, the liability imposed by the statute is not penal in its character. Its sole purpose is, not to punish, but to provide for the making of compensation by wrong-doers for the injury sustained by their wrongful act.

The decree appealed from should be reversed.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, VREDENBURGH, VOORHEES, VROOM—10.

*For affirmance*—None.