There has been no material change in the subject-matter of this litigation since the decision in 1908 in Bassett v. UnitedStates Cast Iron Pipe and Foundry Co., 74 N.J. Eq. 668; affirmed,75 N.J. Eq. 539.
It will be recalled that at that time the company had a reserve fund, accumulated by withholding dividends from its preferred and common stockholders, which, though listed on the books as "Reserve for Additional Working Capital," was held to be surplus profits and not working capital in the statutory sense of section 47 of the Corporation act, and that so much thereof as was derived from withholding dividends from the preferred stockholders was held to be available for division among them — that is to say, whenever in the opinion of the directors it was no longer needed for the purpose for which it was reserved, and they, in their discretion, saw fit to divide it. The character of that fund remains the same except that its book title is now "Working Capital Reserve," and the respective amounts composing the fund withheld from the two classes of stock have changed. At the end of the fiscal year, 1922, the amount of dividends withheld from preferred stock was $700,000; from common stock, $1,800,000, in round figures. The outstanding capital stock is now $12,000,000 preferred, seven per centum, non-cumulative dividends, and $12,000,000 common.
The company's earnings during the year 1922 were over a million dollars, and after paying a dividend of five per cent. ($600,000) on the preferred stock the balance ($559,595.75) was transferred to the working capital reserve. Later, a further dividend of two per cent. was declared for the year 1922, and the amount ($240,000) was withdrawn from the working capital reserve to pay it. On November 16th, 1923, the company resolved to pay to the preferred stockholders an additional dividend of one-half of one per cent., and a like dividend of one-half of one per cent. to the *Page 391 
common stockholders, and drew upon the working capital reserve for the amount ($120,000). The resolution declaring the dividend on the preferred stock recites that it was out of earnings withheld from the preferred stockholders in previous years and was no longer needed as working capital, and the one declaring the dividend on the common stock, after setting forth the fact that a dividend of seven per cent, had been paid to the preferred stockholders for the year 1922 out of the profits of that year, states that it is out of the net earnings for the year 1922. At this juncture the complainant, Moran, a common stockholder, filed his bill to enjoin the payment of the additional dividend to the preferred stockholders, and the complainant, Day, a preferred stockholder, filed his bill to prevent the payment of the dividend declared on the common stock.
The Moran bill. The complainant, a common stockholder, contends that the company having paid seven per cent, in dividends on the preferred stock for the year 1922 — the yearly maximum fixed by its charter — it was unlawful to declare the extra dividend of one-half of one per cent, out of withheld dividends of prior years because the charter limits the payment of dividends in
any one year to seven per cent. The certificate of incorporation fixes the yearly dividend at not to exceed seven per centum.
Section 18 of the Corporation act of 1896 provides, as to preferred stock, that
 "The holders thereof shall be entitled to receive and the corporation shall be bound to pay thereon a fixed yearly dividend, to be expressed in the certificate not exceeding eight per centum, payable quarterly, half yearly or yearly before any dividend shall be set apart or paid on the common stock."
This, obviously means, as to non-cumulative dividends, that out of the profits of any fiscal year not more than the percentage fixed by the charter shall be paid on such stock for such year, but it does not prohibit the company, after having paid the fixed yearly dividend, from, in the same year, declaring and paying additional dividends out of profits earned in prior years applicable to dividends for such years, and *Page 392 
which, but for holding them in reserve for economic reasons, would have been distributed in dividends in those years. These profits belong primarily to the preferred stockholders, and the directors are in nowise restricted, either as to amount, time or occasion, when distribution shall be made.
It has been suggested that the withheld profits are available only for dividends in lean years to make up deficiencies, and that that was the effect of the opinion in the Bassett Case.
That situation was involved but the point was not.
The resolution declaring the dividend is lawful and the bill will be dismissed.
The Day bill. This bill is by a preferred stockholder to prevent the payment of the dividend declared on the common stock "out of the profits of 1922." The dividend was declared after the company had paid seven per cent, on the preferred stock for that year. The point made is, that no dividend can be declared on the common stock until all the withheld profits applicable to dividends on the preferred stock have first been divided and paid.
It will be observed that section 18 provides not only that preferred stockholders shall be entitled to receive, and the corporation shall be bound to pay, a fixed yearly dividend, but also declares that such dividend shall be paid "before any dividend shall be set apart or paid to the common stock." The quoted language is unmistakable, and the reason for it is aptly demonstrated in the present effort of the board of directors to favor the common stock at the expense of the preferred stockholders. While the statute says that the preferred stockholders shall be entitled to receive. and the company shall be bound to pay, a fixed yearly dividend out of the profits, when that obligation is to be performed is largely a matter of discretion with the directors. They are at liberty to pass dividends year after year and pile up profits if in their opinion it is for the welfare of the company that this be done — as was done here — and in the absence of fraud, actual or constructive, their judgment is controlling. But once having decided to divide the profits, duty supplants discretion, and it becomes incumbent upon the directors to discharge *Page 393 
the company's obligation to pay the fixed yearly dividends, and this before any dividend shall be set apart or paid on the common stock, viz., to holders of cumulative dividend shares, all arrearages; to holders of non-cumulative dividend stock, the dividends withheld. Otherwise, if the action of the defendant company were sanctioned, and the directors pursued the course they have outlined, the rights of the preferred stockholders in the reserve profits could be indefinitely ignored and altogether subordinated to those of the common stock. Although each class has a definite sum in the reserve, and one cannot encroach on the other's for dividends, the preferential right of payment of dividends assured by the statute cannot be disregarded. The statutory design was to meet just such a situation as here confronts the preferred stockholders. The legislative scheme was to protect them in their priority rights to dividends over the common stock in all events, and where, as here, profits of past years applicable to dividends on both preferred and common stock are held in reserve, or there are current profits applicable to dividends on common stock, it was conceived that this protection would be afforded by forbidding the payment of any dividends on the common stock until the amount due the preferred stockholders was first paid. The statute in this respect is nothing more or less than a definition of the equitable rights of the preferred stockholders arising out of the company's obligation to pay the yearly fixed dividend, for if the company had profits not needed in its business, and was about to distribute them among the common stockholders when it owed dividends on the preferred stock, a court of equity would enjoin the diversion, just as it would intervene in behalf of creditors of a corporation when dividends are in derogation of their rights.
The fact that the dividends was declared out of the profits of 1922 adds no merit. The profits of that year had been in fact transferred to the working capital reserve, and the amount of the dividend was later withdrawn to meet it: but that is unimportant. The profits of 1922 were bulk surplus profits, by whatever name, and, as Vice-Chancellor Howell *Page 394 
observed, mere bookkeeping entries cannot change their character. The dividend cannot be differentiated, because it was out of the profits of the last fiscal year, any more than if it had been declared out of the profits of any preceding year and carried in the working capital reserve.
The defendant company's conception of section 18 is illustrated by the stock preference clauses contained in the certificate of incorporation, which read as follows:
"The preferred stock shall be entitled out of any and all surplus net profits, whenever declared by the board of directors, to non-cumulative dividends at a rate not to exceed seven per cent. (7%) per annum for the fiscal year beginning on the first day of June, 1899, and for each and every other fiscal year thereafter, payable in preference and priority to any payment of any dividend on the common stock for such fiscal year. In the event of the dissolution of the corporation the holders of the preferred stock shall be entitled to receive par value of their preferred shares out of the surplus funds of the corporation remaining after the payment of its debts. before any payment shall be made therefrom to the holders of the common stock. The common stock shall be subject to the prior rights of the holders of the preferred stock as herein declared. If after providing for the payment of full dividends for any fiscal year on the preferred stock there shall remain any surplus net profits for such year, any of such net profits of such year and of any other fiscal year, after full dividends shall have been paid on the preferred stock, shall be applicable to such dividends upon the common stock as from time to time shall be declared by the board of directors: and out of any such surplus net profits, after the closing of any fiscal year, the board of directors may pay dividends upon the common stock of the corporation for such fiscal year, but not until the dividends upon the preferred stock for such fiscal year shall have been actually paid or provided for and set apart."
This interpretation, if such it be, is, in effect, that non-cumulative dividends are entitled to precedence only in years for which dividends are declared on the common stock out of profits of such years sufficient to pay dividends on both preferred and common stock, and not for years when applicable profits are available but undivided. The view is manifestly too narrow, for in the favored circumstances the preferred stock would be, as a matter of course, entitled to priority because of, as has already been pointed out, the company's bounden duty to pay the preferred stockholder a fixed yearly *Page 395 
dividend. The fixed yearly dividend is the measure of their income per year out of profits per year, and the obligation of lean years is not met by preferential payments in fat years. Sight is lost entirely of the specific subordination of all dividends on the common stock.
Section 18 was amended in 1901 (P. L. 1901 p. 245), and in respect of dividends on preferred stock it provides:
"And such dividends may be made payable before any dividends shall be set apart or paid on the common stock, and such dividends may be made cumulative; provided the corporation shall set apart or pay the said dividends to the holders of non-cumulative preferred stock before any dividends shall be paid on the common stock."
The preservation of the priority right of non-cumulative dividends, it would seem, emphasizes the view here entertained that the legislature intended that no profits were to be divided among common stockholders, whatever may have been their origin or however applicable, unless the company's obligation to the preferred stockholders was first discharged.
The statutory ban on payments of dividends on the common stock, until the preferred stockholders have been awarded their just due, is explicit and imperative. The preference clauses in the certificate of incorporation, in so far as they are thus inconsistent with the statute, are invalid. Gen. Stat. p. 1604 §8 ¶ 7. The dividend under consideration is without warrant in law and will be enjoined.
 *Page 663