**LICH v. UNITED STATES RUBBER CO.**

District Court, D. New Jersey.
July 3, 1941.

Besson & Applegate, of Hoboken, N. J. (John B. Applegate, of Hoboken, N. J., and Charles A. Lich, of St. Louis, Mo., of counsel), for plaintiff.

Pitney, Hardin & Skinner, of Newark, N.J. (Waldron M. Ward and Mahlon Pitney, both of Newark, N. J., of counsel), for defendant.

SMITH, District Judge.

The plaintiff, Sophia G. Lich, a holder of non-cumulative preferred stock of the defendant, United States Rubber Company, a corporation, seeks to enjoin the payment of a dividend on the common stock declared on March 5, 1941. The facts, which are undisputed, are fully set forth in the findings of fact, separately filed. The essential facts are restated herein for the purpose of discussion.

The defendant is a corporation organized and existing under the laws of the State of New Jersey, having been originally incorporated in 1892 under an act entitled "An Act concerning corporations," approved April 7, 1875, Revision 1877, p. 175, and, acts amendatory thereof and supplementary thereto. The plaintiff is, and was during the years in question, the holder of three hundred shares of non-cumulative preferred stock of the defendant.

In each of the fiscal years (the fiscal year conforming to the calendar year) of 1935, 1936, and 1937, the annual net earnings of the defendant were $2,231,377.69, $10,172,-484.46, and $8,607,902.92, respectively; in each of the said years, however, there was a deficit of $25,870,402.67, $17,204,158.52, and $10,471,626.89, respectively, and a corresponding impairment of capital. The deficit, representing the accrued losses of prior years, existed in 1934 and was carried over into the succeeding years, varying in each year only as to amount. It definitely appears that in each of the said years the annual net earnings were applied to the deficit, thereby effecting substantial reductions. There were no dividends declared on either the preferred or the common stock during the said fiscal years.

The defendant, in 1938, pursuant to and in accordance with the statute,[1] reconstructed its capital structure. There was issued, in lieu of the outstanding common stock of no par value, common stock of the par value of $10. This reconstruction reduced the capital liability and created a capital surplus, which was applied to the then existing deficit, resulting in its cancellation. Thereafter, in the years 1938, 1939, and 1940, the deficit having been cancelled, the annual net earnings for each of the said years were productive of net profits and were available for the declaration and lawful payment of dividends; in each of the said years dividends on the non-cumulative preferred stock were declared and paid in full. No dividends, however, were declared on the common stock.

On March 5, 1941, the defendant declared a dividend, payable on April 30, 1941, on both the preferred and common stock. This declaration of dividends, which is herein questioned, specifically contemplates payment from the net profits of the current year and from no other fund.

It is to be noted that in the years in question, to wit, 1935, 1936, and 1937, the defendant, despite the deficit, maintained adequate reserves. These reserves were maintained both prior and subsequent to the said period. It is to be further noted, however, that the present declaration of dividends does not direct invasion of the reserves for payment; the reserves are maintained intact.

The preferential rights of all preferred stockholders, including the plaintiff, as stated in the certificate of incorporation and embodied in the certificate of stock issued thereunder, are as follows: "The holders of First Preferred Stock shall be entitled to receive semi-annually or quarterly all net earnings of the Company determined and declared as dividends in each fiscal year up to but not exceeding eight per centum per annum on all outstanding First Preferred Stock before any dividend shall be set apart or paid upon any other stock of the Company. Such dividends upon the First Preferred Stock shall not be cumulative and the First Preferred Stock shall not be entitled to participate in or to receive any profits or earnings other than, or additional to, such non-cumulative eight per cent, dividends. * * *."

---

[1] L.1896, ch. 185, p. 286, et seq., as amended by L.1926, ch. 318, p. 537 et seq., N.J.S.A. 14:11—5.

The preferences are in conformity with the statute and, as therein permitted, the dividends are declared non-cumulative.

It is the contention of the plaintiff that the established preference as to dividends, to wit, priority of payment, extends not only to the current year, but to the prior years of 1935, 1936, and 1937, to the extent of the annual net earnings of the said years; and, that dividends may not be paid on the common stock at this time until the dividends are paid on the preferred stock for the years in question, either in full or in proportion to the annual net earnings of those years. It is urged that an inchoate right to dividends attached to the annual net earnings of the said years and that the arrearages must be paid in full to the holders of the non-cumulative preferred stock before there can be any payment of dividends on the common stock even out of current net profits.

■ It is conceded that the rights of stockholders, both common and preferred, are dependent upon, and must be determined under, the law of the corporate domicile. The plaintiff relies upon the doctrine enunciated in the following cases: Bassett v. United States Cast Iron Pipe & Foundry Co., 75 N.J.Eq. 539, 73 A. 514; Day v. United States Cast Iron Pipe & Foundry Co., 95 N.J.Eq. 389, 123 A. 546, affirmed 96 N.J.Eq. 736, 126 A. 302. The doctrine is not disputed. The principal question presented for determination is its applicability to the instant case. The question requires a full discussion of the cited cases.

In the Bassett case the corporation accumulated from the net profits for the years 1900 to 1904, inclusive, a fund which was designated as "reserve for additional working capital." A substantial portion of the fund thus accumulated represented net profits withheld from non-cumulative preferred stockholders and retained in the business, but otherwise available for the payment of dividends. Thereafter, in a succeeding year, there was a declaration of dividends on the preferred stock; the said declaration of dividends contemplated payment out of the accrued net profits. A common stockholder sought to enjoin the payment of the dividends. He argued that the right of the holders of non-cumulative preferred stock to share in the undistributed net profits was lost on the passing of the fiscal year in which the net profits were earned.

The court in determining the relative rights of preferred and common stockholders stated: "It seems to us that neither the contention of the complainant nor that of the defendant is altogether sound. On the one hand, the corporation has no right to accumulate a reserve fund from earnings which would otherwise be paid out as dividends to the holders of common stock, and afterward use it to pay dividends to the preferred stockholders, when the net profits of the year for which the dividend is declared are not sufficient for that purpose. On the other hand, when the reserve fund is accumulated, in whole or in part, by the cutting down of dividends which would otherwise have been paid to preferred stockholders, that fund, so far as it represents moneys so retained, is available for the payment of subsequent dividends upon the preferred stock. To yield to the contention of the complainant would be to permit the directors of the corporation to defraud the preferred for the benefit of the common stockholders; while to sanction the claim of the defendant would be to put it in the power of the directors to defraud the common for the benefit of the preferred stockholders. * * * So far as that fund is made up from monies which would otherwise have been paid to the preferred stockholders, we concur in the conclusion of the vice chancellor that it is available for the purpose of paying the dividend which is the subject-matter of this controversy."

In the Day case, 95 N.J.Eq. 389, 123 A. 546, the facts were substantially the same as in the Bassett case. The net profits of prosperous years were withheld from both the common and preferred stockholders and were transferred to a fund designated as "Working Capital Reserve." Thereafter, in a succeeding year, dividends were declared on both the common and preferred stock; the said declaration of dividends contemplated payment out of the fund thus accumulated. Day, a non-cumulative preferred stockholder, sought to enjoin the payment of the dividends on the common stock; he contended that dividends could not be paid on the common stock until all of the "withheld profits" applicable to the dividends on the non-cumulative preferred stock had been paid. Moran, a common stockholder, in the same suit, sought to enjoin the payment of dividends on the non-cumulative preferred stock.

The Court of Chancery, in passing on the specific question thus presented, re-

stated the doctrine as follows: "It will be observed that section 18 provides not only that preferred stockholders shall be entitled to receive, and the corporation shall be bound to pay, a fixed yearly dividend, but also declares that such dividend shall be paid 'before any dividend shall be set apart or paid to the common stock.' The quoted language is unmistakable and the reason for it is aptly demonstrated in the present effort of the board of directors to favor the common stock at the expense of the preferred stockholders. While the statute says that the preferred stockholders shall be entitled to receive and the company shall be bound to pay a fixed yearly dividend out of the profits, when that obligation is to be performed is largely a matter of discretion with the directors. They are at liberty to pass dividends year after year and pile up profits, if in their opinion it is for the welfare of the company that this be done—as was done here—and in the absence of fraud, actual or constructive, their judgment is controlling. But once having decided to divide the profits, duty supplants discretion, and it becomes incumbent upon the directors to discharge the company's obligation to pay the fixed yearly dividends, and this before any dividend shall be set apart or paid on the common stock, viz: To holders of cumulative dividend shares, all arrearages; to holders of noncumulative dividend stock, the dividends withheld. Otherwise, if the action of the defendant company were sanctioned, and the directors pursued the course they have outlined, the rights of the preferred stockholders in the reserve profits could be indefinitely ignored and altogether subordinated to those of the common stock. Although each class has a definite sum in the reserve and one cannot encroach on the other's for dividends, the preferential right of payment of dividends assured by the statute cannot be disregarded. The statutory design was to meet just such a situation as here confronts the preferred stockholders. The legislative scheme was to protect them in their priority rights to dividends over the common stock in all events, and where, as here, profits of past years applicable to dividends on both preferred and common stock are held in reserve, or there are current profits applicable to dividends on common stock, it was conceived that this protection would be afforded for forbidding the payment of any dividends on the common stock until the amount due the preferred stockholders

was first paid. The statute in this respect is nothing more or less than a definition of the equitable rights of the preferred stockholders arising out of the company's obligation to pay the yearly fixed dividend, for if the company had profits not needed in its business, and was about to distribute them among the common stockholders when it owed dividends on the preferred stock, a court of equity would enjoin the diversion, just as it would intervene in behalf of creditors of a corporation when dividends are in derogation of their rights."

In the Day case, 96 N.J.Eq. 736, 126 A. 302, 304, the Court of Errors and Appeals in affirming the Court of Chancery clearly defined the limitations of the doctrine as follows: " * * * in the absence of refining differences of designation and preferences, and restrictions and qualifications thereof, preferred stock, so far as the payment of dividends is concerned, may, speaking generally, be said to embrace cumulative preferred stock and noncumulative preferred stock, the distinction between the two being that, while dividends * * * upon each can, of course, only be paid out of profits or surplus * * *, the dividends upon cumulative preferred stock have at all times and for all years past and present, until paid, priority in payment over any and all unpaid dividends upon common stock, whether the net earnings for any particular past or present year were or were not sufficient to pay the stipulated cumulative dividends upon preferred stock for that year; whereas the like priority of dividends upon noncumulative preferred stock (wholly or partially as the case may be) is limited to the unpaid dividends for those years when such net earnings were sufficient (wholly or in corresponding part) to pay such dividends."

The court, in further commenting on the question, stated: "The effort here is to prevent the payment of a dividend on the common stock in violation of the priority rights of the preferred stockholders. In the absence of fraud, therefore, two things are essential to accomplish this, namely: First, affirmative action of some kind by the board of directors establishing the fact of earnings for the previous years, now available for the payment of the withheld or 'passed' dividends for those years upon the preferred stock; and, second, affirmative action of the board of directors declaring a dividend upon the common stock in

violation of the priority rights thus established of the preferred stockholders."

■ The doctrine of the Cast Iron Pipe cases must be viewed in the light of the particular facts of those cases; when so viewed it is apparent that it is limited in its application. The doctrine, based upon sound equitable principles, is a departure from the general rule that the holders of non-cumulative preferred stock lose with the close of the fiscal year all right in the undistributed net profits of that year. It preserves to the holders of the non-cumulative preferred stock their right in the undivided net profits withheld from them and retained in the business, but otherwise available for the payment of dividends. The right to earned dividends is not extinguished upon the mere passing of the fiscal year. The doctrine, however, cannot be extended by implication beyond its clear intendment.

The payment of dividends is governed by statute,[2] N.J.S.A. 14:8–19, the pertinent provisions of which read as follows: "The directors of a corporation shall not pay dividends except from its surplus * * * or from the net profits arising from the business of the corporation, nor shall they divide, withdraw, or in any way pay to the stockholders or any of them, any part of the capital stock of the corporation or reduce its capital stock except as authorized by law."

■ It may be generally stated that as to the payment of dividends the holders of preferred stock are in no better position than the holders of common stock except as to priority of payment. The payment of dividends on the preferred stock, both cumulative and non-cumulative, is subject to the same statutory restrictions as the payment of dividends on the common stock. It is well established that dividends on preferred stock are not payable absolutely and unconditionally, but only out of the sources designated by the statute, to wit, "surplus" or "net profits."

■ The payment of dividends on non-cumulative preferred stock is further circumscribed by the certificate of incorporation and the certificate of stock issued thereunder; the dividends on such stock are payable only out of net profits and for the years in which said net profits are actually

earned. McGregor v. Home Insurance Co. of Newark, 33 N.J.Eq. 181, 184; Elkins v. Camden & Atlantic Railroad Co., 36 N.J. Eq. 233; Day v. United States Cast Iron Pipe Co., 96 N.J.Eq. 736, 126 A. 302; National Newark & Essex Banking Co. et al. v. Durant Motor Co. et al., 124 N.J.Eq. 213, 1 A.2d 316, affirmed 125 N.J.Eq. 435, 5 A.2d 767. The payment of dividends on non-cumulative preferred stock, except from a source recognized by the statute, is unlawful. Ibid.

■ When the doctrine is considered in the light of the statute and the foregoing principles, it is evident that the right of the non-cumulative preferred stockholders is conditional upon: First, the accrual of net profits, and, second, their retention in the business. It presupposes a source, to wit, net profits, from which the dividends on the non-cumulative preferred stock may be lawfully paid, if the directors in their discretion elect so to do. The doctrine presupposes the accrual of net profits, as distinguished from annual net earnings, to which the non-cumulative preferred stockholders' inchoate right to earned dividends attaches; this inchoate right continues beyond the fiscal year in which the net profits are actually earned, and, upon distribution of the accrued net profits in a succeeding year, the inchoate right becomes consummate and must be recognized. The dividends on the non-cumulative preferred stock are "cumulative" to the extent of net profits actually earned and available for the lawful payment of dividends, but withheld from the non-cumulative preferred stockholders and retained in the business. If, however, there are no net profits from which a dividend may be lawfully paid and to which the right to dividends may attach, the deficiency is not chargeable against the net profits of succeeding years.

The bounds of the doctrine are clearly defined in the Day case. It is applicable in those instances in which corporations accumulate net profits, otherwise available for the payment of dividends, and thereafter, in succeeding years, impinge upon the funds thus accumulated for the payment of dividends on the common stock, in derogation of the rights of the non-cumulative preferred stockholders. It is equally applicable in those instances in which corporations, pursuing a similar course, direct

---

[2] L.1896, ch. 185, § 30, p. 286, as amended by L.1904, ch. 143, § 1, p. 275, as amended by L.1930, ch. 120, § 1, p.

376. There have been no substantial changes in the statutory provisions.

payment of dividends on the common stock from current net profits while retaining in the business the accrued net profits of preceding years, likewise in derogation of the rights of the non-cumulative preferred stockholders.

It necessarily follows, therefore, that the actual primary test of applicability is whether or not there were, in the years in which dividends were not declared, net profits available for the lawful declaration and payment of dividends, but withheld from the' non-cumulative preferred stockholder and retained in the business.

What are "net profits" within the meaning of the statute? The statute is devoid of any definitive answer. The term, however, is one of common usage and the ordinary acceptation must be adopted. The term connotes the clear pecuniary gain remaining after deducting from the gross earnings of the business the expenses incurred in its conduct, the losses sustained in its prosecution, and the capital invested. Park et al. v. Grant Locomotive Works et al., 40 N.J.Eq. 114, 3 A. 162; Hyams v. Old Dominion Copper Mining & Smelting Co., 82 N.J.Eq. 507, 89 A. 37, affirmed N.J.Err. & App., 91 A. 1069; National Newark & Essex Banking Co. et al. v. Durant Motor Co. et al., 124 N.J.Eq. 213, 1 A.2d 316, affirmed 125 N.J.Eq. 435, 5 A.2d 767; Mobile & Ohio Railroad Company v. Tennessee, 153 U.S. 486, 497, 14 S.Ct. 968, 38 L.Ed. 793; St. John v. Erie Railway Co., 22 Wall. 136, 89 U.S. 136, 148, 22 L.Ed. 743; Guaranty Trust Co. v. Grand Rapids, G. H. & M. Ry. Co., D.C., 7 F.Supp. 511. It is a prerequisite to the existence of net profits that the assets of a corporation exceed the liabilities, including the liability on the capital stock. Where the capital is impaired, annual net earnings, if insufficient to offset the impairment, do not constitute net profits. Willcuts v. Milton Dairy Company, 275 U.S. 215, 218, 48 S.Ct. 71, 72 L.Ed. 247; Foley Securities Corp. v. Commissioner of Internal Revenue, 8 Cir., 106 F.2d 731, 733. The term net profits is not synonymous with the term annual net earnings. Annual net earnings may be productive of net profits, or, as in the instant case, reductive of the deficit. National Newark & Essex Banking Co., et al. v. Durant Motor Co. et al., supra.

In the immediate case there· were, in the years in question, to wit, 1935, 1936, and 1937, no net profits to which the inchoate right to dividends could have attached. There was, as hereinabove stated, in each of the said years, a substantial deficit which greatly exceeded the annual net earnings of the corresponding year, and, to the reduction of which the annual net earnings were applied. It is manifest, therefore, that the annual net earnings of each of the said years resulted, not in a profit, but in a reduction of the deficit. There was in each of the said years no source from which dividends could have been paid lawfully; the payment of dividends under the circumstances would have been unlawful.

The court's construction of the doctrine of the Cast Iron Pipe cases finds support in the case of National Newark & Essex Banking Co. et al. v. Durant Motor Co. et al., 124 N.J.Eq. 213, 1 A.2d 316, 319, affirmed 125 N.J.Eq. 435, 5 A.2d 767, in which it was stated: "Our statute forbids the payment of dividends except from surplus or 'from the net profits arising from the business of the corporation.' R.S. 14:8–19 [N.J.S.A. 14:8–19]. In my opinion, no dividends out of net profits are earned until there is a balance of assets over liabilities, arising from the business of the corporation. Though the company be $50,000 better off at the close of 1938 than at the beginning, yet there will be no net profits at the end of the year, but only a smaller deficit. No dividend is earned in any year unless the operations for that year produce a fund (which need not be cash) which may some day be available for the dividend. The hoped-for profits of 1938 can never be used for dividends, but must be applied to prior losses."

It is in effect contended by the plaintiff that the statutory term "net profits" is synonymous with "annual net earnings", and that in determining the net profits for the years in question, the losses of preceding years, as indicated by the deficit, may be disregarded. The fallacy of this contention is obvious. This theory would permit that which the statute, hereinabove quoted, expressly prohibits, to wit, the payment of dividends out of annual net earnings, even though such payment resulted in an impairment of capital. The payment of dividends out of annual net earning when, as in the immediate case, a deficit exists, would result in an impairment of capital, in violation of the statute. Whitfield v. Kern et al., 122 N.J.Eq. 332, 192 A. 48; Siegman v. Electric Vehicle Co. et al., 72 N.J.Eq. 403, 65 A. 910; Appleton

682

et al. v. American Malting Co. et al., 65 N.J.Eq. 375, 54 A. 454. The corporation is charged with the duty of maintaining the integrity of the capital, on the faith of which credit was extended, as a "trust fund" for the security of the creditors as well as for the benefit of the corporation. Id. The plaintiff's interpretation would bring the doctrine of the Cast Iron Pipe cases into direct conflict with the statute.

The Supreme Court of Pennsylvania in the case of Branch v. Kaiser et al., 291 Pa. 543, 140 A. 498, condemned as unsound and unlawful the payment of dividends out of annual net earnings when a deficit existed. In that case the court stated that it was the duty of the corporation to devote the annual net earnings to the payment of its debts, the reduction of the deficit, and the improvement of the financial structure.

The plaintiff, in support of the latter contention, cites the case of Borg et al. v. International Silver Co., 11 F.2d 147, 151, in which the Circuit Court of Appeals, Second Circuit, stated: "It is not unlawful in New Jersey to pay dividends out of profits though the capital be in fact impaired. Goodnow v. American Writing Paper Co., 73 N.J.Eq. 692, 69 A. 1014." It is the opinion of this court that the statement was predicated upon an erroneous interpretation of that which appeared as mere dictum in the latter case. The statute, as construed by the Court of Errors and Appeals of New Jersey, prohibits capital impairment. Whitfield v. Kern et al., supra; Siegman v. Electric Vehicle Co. et al., supra; Appleton et al. v. American Malting Co. et al., supra.

It is further argued by the plaintiff, but in the alternative, that under the doctrine of the Cast Iron Pipe cases, the non-cumulative preferred stockholders' inchoate right to dividends attaches to the annual net earnings, as distinguished from net profits, and that the net profits of the succeeding years are chargeable with the payment of dividends to the non-cumulative preferred stockholders to the extent of such earnings. This argument is untenable. It extends the doctrine beyond its clear intendment and engrafts upon the non-cumulative preferred stock a preference peculiar to cumulative preferred stock. The fundamental distinction between cumulative and non-cumulative preferred stock was not abolished but was, in fact, specifically preserved. Day v. United States Cast Iron Pipe & Foundry Co., 96 N.J.Eq. 736, 126 A. 302.

The Supreme Court in the case of Wabash Railway Company et al. v. Barclay et al., 280 U.S. 197, 203, 50 S.Ct. 106, 107, 74 L.Ed. 368, 67 A.L.R. 762, in passing upon a similar contention, stated: "When a man buys stock instead of bonds he takes a greater risk in the business. No one suggests that he has a right to dividends if there are no net earnings. But the investment presupposes that the business is to go on, and therefore even if there are net earnings, the holder of stock, preferred as well as common, is entitled·to have a dividend declared only out of such part of them as can be applied to dividends consistently with a wise administration of a going concern. When, as was the case here, the dividends in each fiscal year were declared to be non-cumulative and no net income could be so applied within the fiscal year referred to in the certificate, the right for that year was gone. If the right is extended further upon some conception of policy, it is enlarged beyond the meaning of the contract and the common and reasonable understanding of men."

If the annual net earnings of a corporation are justifiably applied to legitimate corporate purposes, such as payment of debts, reduction of deficits, and restoration of impaired capital, the right of non-cumulative preferred stockholders to the payment of dividends is lost. If the annual net earnings are applied against prior losses and are thereby completely absorbed, there are no net profits from which dividends may be lawfully paid or to which the inchoate right to dividends may attach. National Newark & Essex Banking Co. et al. v. Durant Motor Co. et al., supra. If the annual net earnings are lawfully expended, the right of non-cumulative preferred stockholders therein is lost. Wabash Railway Co. et al. v. Barclay et al., supra.

Both arguments of the plaintiff are subject to further objection. The payment of dividends from annual net earnings, when the liabilities of a corporation exceed the assets, would be in derogation of the rights of creditors. The payment of dividends under such circumstances, while debts accrue, would be contrary, not only to sound business practice, but to the legislative policy.

It is contended by the plaintiff that in determining whether or not there were net profits available for the payment of dividends in the years in question, the

liability on the capital stock should be diminished in an amount equivalent to the value of the shares of stock issued as stock dividends in the years 1912 and 1919. It is contended that the capital liability thus created may be disregarded. This contention is not sound. A stock dividend is a conversion of surplus or undivided profits into capital stock, which is distributed among the stockholders in lieu of cash. It does not affect the proportionate interest of the stockholders in the corporate assets; it does, however, affect the essence of that interest. The capital is actually increased in an amount equivalent to the charge against surplus. The interest of the stockholders in the surplus is decreased, but their interest in the capital is correspondingly increased. The accumulated net profits, instead of being distributed, are capitalized and retained in the business. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. It, therefore, seems obvious that the liability of the corporation on the capital stock, issued as a stock dividend in lieu of cash, cannot be disregarded; in fact, it represents invested capital drawn from surplus in which stockholders had an interest.

 The financial statements of 1934 to 1940, inclusive, were offered in evidence without objection. The accuracy of the said statements is not questioned; the facts therein summarized are admitted. The court, therefore, in the absence of fraud or misrepresentation, may neither inquire further into the corporate accounts nor substitute its judgment for that of the directors. City Bank Farmers' Trust Co. v. McCarter et al., 111 N.J.Eq. 315, 162 A. 274, affirmed, 114 N.J.Eq. 46, 168 A. 286. The rights of the stockholders must be determined on the basis of the corporate accounts. Ballantine v. Young, 79 N.J.Eq. 70, 81 A. 119; Hewitt v. Hewitt, 113 N.J. Eq. 299, 166 A. 528.

As hereinabove stated, the corporation maintained in the years in question adequate reserves for insurance, pensions, and contingencies. It does not appear, however, that the sum retained in this account was disproportionate or that it represented profits withheld from the non-cumulative preferred stockholders, as was the fact in the Cast Iron Pipe cases. It appears in the immediate case that the reserves are, and have been, maintained in accordance with the sound business policy.

The directors are charged with the management of the corporate business, and, in the absence of fraud or bad faith, their authority must be regarded as absolute. Questions of management and policy must be left to their honest judgment and discretion. Kelly v. Kelly-Springfield Tire Co., 106 N.J.Eq. 545, 554, 152 A. 166; Elevator Supplies Co. v. Wylde, 106 N.J. Eq. 163, 150 A. 347; Madsen et al. v. Burns Bros. et al., 108 N.J.Eq. 275, 155 A. 28; Shonnard v. Elevator Supplies Co., Inc., 111 N.J.Eq. 94, 161 A. 684. Therefore, the right to maintain reserve is not open to challenge.

Judgment in favor of the defendant and against the plaintiff is entered; and, the temporary restraint heretofore entered is dissolved.