This controversy relates to dividends on the non-cumulative preferred stock of the American Ice Company. Dividends at the stipulated rate of $6 a share were paid annually from 1917, when the stock was issued, to and including 1934. Then, for ten years, reduced dividends, or none at all, were declared. In 1945, the full dividend was resumed and the following year a dividend was declared on the common stock. The complainants, who hold preferred stock, contend that no common stock dividend should be paid until the deficiency in the preferred dividends for the years 1935 to 1944 is made up. The certificate of incorporation states the rights of the preferred stockholders in these words:
"The holders of the preferred stock hereby authorized shall be entitled to receive out of the surplus or net earnings of each fiscal year, and the corporation shall be bound to pay thereon as and when declared by the Board of Directors, a non-cumulative dividend at the rate of but never exceeding six per cent. per annum payable yearly, half yearly or quarterly before any dividend shall be set apart or paid on the common stock for such year; the remainder of the surplus or net earnings of each fiscal year may, in the discretion of the Board of Directors, be distributed as dividends among the holders of the common stock, as and when the board shall determine." *Page 580 
During the years in which the full $6 dividend was paid on the preferred stock, a surplus of several million dollars was built out of current earnings. This surplus was part of the company funds in 1935, when a preferred dividend of $4 only was paid, but the year's earnings were less than the amount of the dividend which was paid. The complainants argue that preferred stockholders, although their stock is non-cumulative, may look for dividends to the surplus fund from whatever source derived, as well as the net earnings of each year, and hence that the remaining $2 for 1935 must be paid them before any dividend can be paid to the common stockholders. Neither the general principles applying to non-cumulative preferred stock nor the particular language of the certificate of incorporation supports this position. The net earnings each year up to the amount of the specified preferred dividend must be divided among the preferred stockholders before a dividend can be paid to the common stockholders either that year or subsequently. But the preferred stockholders have no interest in the balance of earnings of any year above their specified dividend; the excess is available for dividends on the common stock only. The directors may pass dividends on both classes of stock and accumulate a surplus out of earnings if, in their opinion, this course is for the welfare of the company. And yet the surplus fund so established retains for dividend purposes the same limitation that applied to the annual profits that went into it. Each class of stockholders can have dividends out of only so much of the surplus as is derived from their part of the net earnings. The preferred stockholders have, however, this advantage: The whole of their part of the surplus must be distributed among them, before any dividend is paid on the common stock. Bassett v. U.S. Cast Iron, c., Co.,75 N.J. Eq. 539; Moran v. U.S. Cast Iron, c., Co., 95 N.J. Eq. 389; 96 N.J. Eq. 736. The whole fund accumulated by the defendant company as earned surplus during the years in which the preferred stockholders were paid their full dividends, came from the common stockholders' share of the profits of those years and belongs to them as against the preferred. *Page 581 
In 1934, when $6 was paid, and again in 1935, when $4 was paid to the preferred stockholders, the net profits were less than the amount of the dividends, and necessarily the dividends came in part out of the surplus theretofore accumulated, that is, out of moneys of the common stockholders. In other years, during the period under review, less was paid to the preferred than was currently earned. Equity requires that the preferred stockholders, when asking that the balance of what was earned be paid them, should allow to be set off, or give credit for, the overpayments. My decision on this point would probably be different if the company were proposing to deduct from the dividend earned in 1948, an overpayment of several years ago.
To determine what accrued earnings, if any, should be divided among the preferred stockholders, we must follow their part of the surplus year by year. Each year we credit their account with current net income up to an amount equal to $6 a preferred share and charge the dividends declared. In three of the years, there was a net operating loss, which must, however, be charged against the common and not the preferred stock. A loss one year does not affect the preferred right to a dividend in a succeeding year in which there is a profit, and it does not erase their right to profits earned but not divided in a prior year.
In several years, certain items that affected the balance sheet were not recorded in the profit and loss account but were posted directly to earned surplus. For example, a profit on debentures redeemed in 1936. Such treatment of these items increased or diminished the fund that could be used for dividends under our statute, R.S. 14:8-19. Generally, whatever is available for dividends on one class of stock, is equally available for dividends on the other class. National Newark, c., Co. v.Durant Motor Co., 124 N.J. Eq. 213; 125 N.J. Eq. 435. In some years, there were both additions to, and deductions from, the surplus account, and in such case a balance should be struck and only the net addition or deduction considered. Additions to surplus, like net current income, are added to the preferred side of the surplus account, subject to the limitation that the sum of current net income *Page 582 
and direct surplus additions credited to preferred in any one year must not exceed $6 a share. Deductions from surplus, like current losses, are charged to the common stock.
One final complication. Some years there were a net current income and also deductions from earned surplus, while other years saw an operating loss coupled with additions to surplus. Thus in 1940 there was a large current loss, and at the same time there was credited to earned surplus $150,000 from a reserve "believed by company to be excessive." In 1943 net income was $310,000, but $1,475,000 was transferred from earned surplus to a reserve for losses on disposal of non-operating property. In determining how much became available for preferred dividends in each year, should the one item be set off against the other? I have concluded that they should not be set off, but be kept separate, just as the management of the company has separated them in its accounting system. The sum of $150,000 put in the earned surplus account in 1940 and the operating profit of 1943 both should be credited to the preferred stock, while the operating loss in the one year and the surplus deduction in the other year should be charged against the common stock's part of the surplus. This seems to me to give reasonable effect to the preference and to be consistent with that provision of the certificate of incorporation which entitles the preferred stockholders to a dividend "out of the surplus or net earnings."
Complainants and defendants both in turn object to certain items, that this one is not really income and that one is not properly a charge. Accounting practices, the setting up of reserves, the transfer of funds from one account to another, are largely matters of business judgment. The action of the management of the company in respect to its books is presumably correct. City Bank, c., Co. v. McCarter, 111 N.J. Eq. 315;114 N.J. Eq. 46. I have accepted as correct the company's statements of income and earned surplus. Counsel and their accountants can readily calculate the amount earned on the preferred stock, which should have been divided before a dividend was made on the common stock. I have figured it roughly at $2 a share. *Page 583