The difficulties arising out of the above state of facts are principally those of interpretation. We must ascertain the nature and character of the fund known as "Reserve for additional working capital," and we must understand the relation which the statutory provisions bear to the engagements that the shareholders have entered into among themselves, in the company's charter and by-laws, in order to determine the character of this fund.
Primarily, it is a function of the stockholders to fix the amount to be reserved, over and above the capital stock paid in, as a working capital. Corp. act 1896 § 47, P.L. 1901 p. 246.
The act of 1896 gave the corporation capacity to confer this power upon the directors. The act of 1901 confers the power on the stockholders unless otherwise provided in the original or amended certificate of incorporation, or in a by-law adopted by at least a majority of the stockholders. While there are some important differences between section 47 of the act of 1896 and section 2 of the act of 1901, above referred to (Stevens v.United States Steel Corporation, 68 N.J. Eq. (2 Robb.)373), yet for the purposes of the case in hand they are not of consequence, because in this case the incorporators in the original certificate of incorporation and the stockholders in the by-laws conferred the power to fix the amount of the working capital upon the directors.
The directors as early as 1900 opened an account in the company's books of the character known among professional accountants as a representative account, which they denominated "Reserve for additional working capital," to which they appropriated large sums of money in the years 1900, 1902, 1903, 1904 and 1906. These appropriations aggregated the sum of $2,459, 896.64. This fund seems never to have been used as actual working capital; that is, it was never invested in book accounts, plant, machinery, fixtures or materials. It was always invested in securities, which were quickly convertible into cash, and as far as the case shows, bore no relation whatever to those activities in which the company was engaged and for the prosecution of which it was formed. *Page 674 
The complainant does not complain of this action on the part of the directors. I take it that he accords to the directors under the charter and by-laws the right to pile up this "reserve" in their discretion, but, having once appropriated the money to that account, he denies their right to reduce the amount of such reserve, unless the whole sum so withdrawn shall be given to the common stockholders. He contends that when the fund is once created it cannot be disturbed except by vote of the common stockholders, and that its appropriation to working capital perforce changed its character and function to such an extent as to withdraw it wholly from the reach of the preferred shareholders. Concerning this contention two remarks may be made — first, this fund never became actual working capital. It was never actually employed in the business in which the company was engaged. It has always remained in cash or securities. It has always been a mere creature of bookkeeping and, although as a matter of account merely, it was set apart and tagged with a new name, its physical condition and character were never changed. When it was returned to profit and loss account by the resolution of July 2d, 1908, the return was effected by the treasurer by a mere bookkeeping entry as the resolution directed. It was what the directors called it when they opened the special account — a reserve — which might be used as actual working capital in case it should be needed for that purpose. In order to so use it, it would require the further action of the directors to take the amount so found to be necessary from this account by solemn resolution, and by like resolution to exchange it for machinery or materials. The resolution which declares that the fund had been used as a working capital does not state the facts.Second, this fund was once "Surplus net profits," else it could not have been dealt with as the directors did deal with it. It was originally a fund which was applicable to dividends and during the five years above mentioned could legally have been applied to pay full seven per cent, dividends to the preferred stockholders. I fail to see how its character as "Surplus net profits" can be changed by calling it "Reserve for additional working capital" and doing nothing more about it. *Page 675 
If the fund is of this nature and character, then it is under the full control of the directors and may be used by them for the payment of the dividend in question. They may diminish it for lawful purposes and in a lawful manner in their discretion. They may open other accounts with other names on their books and appropriate the whole or any part of it thereto. But whatever they do about it, so long as it is not actually paid out, it must remain in fact "Surplus net profits." Mere bookkeeping entries cannot affect it.
The fourth paragraph of the charter provides that the preferred stockholders may be paid dividends "out of any and all surplus net profits." If the view above expressed is correct, then the present board of directors have express warrant in the charter for paying the dividend in question out of this reserve fund.
An almost conclusive argument in favor of the defendant's position lies in the fact that there yet remains in the account denominated "Reserve for additional working capital," $2,250,000, which is invested in quickly convertible securities and which the corporation management declare is sufficient for the company's purposes, but which has not yet been actually employed in the operation of the company's business. I understand from the case that the original working capital of $1,720,000 was actually invested in the purchase of materials or plant, or invested in book accounts, and that it has been and is treated as actual working capital. It is quite manifest that there is a wide difference between that original actual working capital invested in property necessary for the company's business and the reserve of $2,250,000 which is merely held as an investment of the surplus moneys belonging to the corporation.
But if the fund is of the character insisted upon by the complainant, viz., actual working capital, yet, in my opinion, the directors have been given full control of it by the charter and by-laws. The charter (paragraph 7) confers upon the board of directors the power without the assent or vote of the stockholders to fix the amount to be reserved for the working capital. The by-laws use the same expression. The complainant argues that this authority, as well as the like authority in the statute. (P. *Page 676 L. 1901 p. 246 § 47 of the act of 1896) goes only to the extent of permitting the directors to establish by resolution an amount to which additions may be made from time to time by virtue of the same authority, but that the fund once built up may not be diminished except by the consent of the common shareholders.
The statute contemplates annual dividends. It likewise contemplates at the time these annual dividends are declared that the body to which the function may be committed by the charter or by-laws — either the directors or the stockholders — shall ascertain whether any additional working capital may be needed in the company's business, and if so, to provide it out of the profits of the business, and so annually to fix the amount which may be so needed. Manifestly this amount may vary. It may be large one year and small the next. In the case of a corporation which had issued common stock only there could be no question. In such a case the directors or stockholders, as the case might be, would reduce the working capital and divide the reduction as a dividend among the stockholders. The words of the statute are no different in the case of a corporation which has issued preferred stock, and the rule must be analogous.
The trend of judicial thought on this point will be found in Vice-Chancellor Stevenson's opinion in Stevens v. UnitedStates Steel Co., 68 N.J. Eq. (2 Robb.) 382.
I do not think that any important change was made in the power of the directors by the amendment to the by-laws in 1906, whereby specific authority was given to them to increase, diminish and vary the amount of the working capital, neither do I find in the statute or the documents in the case any direction to refer the question to the stockholders.
But, says the complainant, although the working capital may be reduced by the directors, the reduction belongs to the common stockholders, and must be divided among them, to the exclusion of the preferred stockholders. I find no appropriation of this kind in the statute nor in the charter or by-laws of the company. In my opinion, any amount taken from actual working capital, or from "reserve for additional working capital," is at once restored to the character that it originally bore. It was either "surplus" or "net profits" or "surplus net profits," when it was *Page 677 
first dealt with by the directors, and probably appeared on the books in the profit and loss account as a surplus. It is now dealt with again. The bookkeeping process is reversed by an entry made by the treasurer, and this should restore the former situation. As a matter of bookkeeping, its place would be in the profit and loss account, or in some other special account in which it would show as a surplus; and it would be applicable to the payment of any and all dividends that the board of directors might lawfully declare.
It is claimed on the part of the complainant that the preferred stock dividends for any fiscal year must be declared and paid out of the profits made by the company during that same fiscal year; that is to say, that profits made during the fiscal year ending in 1904, cannot be paid out in dividends to the preferred stockholders which might be declared during the fiscal year ending in 1905 or 1906. This position is entirely at variance with the charter and the stock certificates, both of which provide that the preferred stock shall be entitled "out of anyand all surplus net profits," whenever declared by the board of directors to non-cumulative dividends, c. I think that this means that the directors may use any surplus profits arising from the operation of the company's business, whenever made, to pay lawfully-declared dividends on the preferred stock, no matter when they shall have been so lawfully declared. The case ofElkins v. Camden and Atlantic Railroad Co., 36 N.J. Eq. (9Stew.) 233, does not apply because of the difference in the wording of the charter.
I therefore conclude that the bill of complaint is without equity, and unless the complainant can amend in such manner as to avoid the objections now presented, it must be dismissed. *Page 702