## STAR PUBLISHING COMPANY *v.* BALL.

[No. 23,706.   Filed February 16, 1922.   Rehearing denied June 1, 1922.]

1. CORPORATIONS.— *Preferred Stock.*— *Redemption.*— *Stock Certificates.*—*Instruction.*—*Statutes.*—A preferred stock certificate providing that "in any application which shall be made of the funds or other assets of the company to the redemption or repayment of its shares of capital stock, all outstanding shares of such preferred stock shall be fully redeemed or repaid at not exceeding the par value thereof," did not empower the corporation to redeem the preferred stock, notwithstanding the use of the word "redemption" and "repayment," as the provision has reference to the manner of application of the funds and assets of the company to the payment of the capital stock upon the final dissolution of the company.  p. 162.

2. CORPORATIONS.—*Increasing or Reducing Amount of Capital Stock.*—In the absence of express statutory authority from the state, a corporation has no right to increase or reduce the amount of its capital stock, unless such increase or reduction is authorized by its charter.  p. 163.

3. EVIDENCE. — *Stock Certificate.* — *Modification.* — *Parol Evidence.*—*Admissibility.*—Where a corporation was not given the right to redeem preferred stock by the certificate or articles of incorporation, parol evidence as to negotiations prior to the organization leading to the incorporation was not admissible to prove that such stock was redeemable.  p. 164.

4. CORPORATIONS.— *Retirement of Preferred Stock.*— *Power of Holders of Common Stock.*— *Statutes.*— Section 5092 Burns 1914, R. S. 1852 p. 358, providing that a manufacturing and mining company may by a vote of its stockholders reduce the amount of capital stock, has reference to the common stock only, and does not empower the common stockholders to re-

duce the capital stock of such a corporation by retiring the preferred stock without the consent of the holders thereof. p. 164.

5. CORPORATIONS.—*Preferred Stock.—Limitation of Dividends.— Dividends on Common Stock.—Statutes.*—Section 5096 Burns 1914, Acts 1903 p. 220, providing that a corporation shall pay such dividends on the preferred stock "as may be expressed in the certificates, but not to exceed in all eight per cent., before any dividend shall be set aside or paid on the common stock," does not preclude a corporation from paying more than eight per cent. dividends on preferred stock after payment of dividends on the common stock. p. 165.

6. CORPORATIONS.—*Preferred Stockholder.—Relation to Corporation.—Rights.*—A preferred stockholder is not a creditor who has loaned money to a corporation, but is as much a party to the business venture as a common stockholder, and is entitled to all the rights of the common stockholder, except as modified by statute and contract. p. 165.

7. CORPORATIONS.— *Preferred Stock.— Payment of Dividends.— Finding.—Evidence.—Sufficiency.*—In a preferred stockholder's action to compel the corporation to pay dividends, where the stock certificate provided that the holder should be paid five per cent. per annum, and should participate in the profits after payment of five per cent. on the common stock, an allowance of eight and one-half per cent. *held* not excessive under the evidence. p. 165.

8. CORPORATIONS.—*Dividends.—Adequacy.—Absence of Finding as to Working Capital.*—Where preferred stockholders were entitled to five per cent. dividend and to one-half of profits after payment of five per cent. to the common stockholders, the amount awarded to a stockholder in an action for an accounting of profits will not be held insufficient in the absence of a showing as to the amount of working capital required. p. 168.

9. EVIDENCE.—*Pleadings and Briefs of a Third Party in Another Action.— Admissibility.*— In an action by a preferred stockholder to require a corporation to declare dividends, it was proper to refuse to permit defendant to introduce in evidence the pleadings and briefs of a third party in another action against the corporation to which plaintiff was not a party. p. 169.

10. CORPORATIONS.— *Waiver of Dividends.— Use of Earnings and Profits to Pay Mortgage Debt.—Acquiescence of Stockholder.*—A preferred stockholder did not waive his right to dividends by acquiescing in the use of the net earnings and profits of the company in paying its mortgage debt, in the

absence of a finding that the corporation was in any way prejudiced or misled by his conduct, but such acquiescence merely suspended the stockholder's right to dividends until there was an excess of earnings over the amounts reasonably required to be expended in paying the mortgage debt. p. 170..

11. CORPORATIONS.— *Preferred Stock.— Redemption.—Action to Cancel Proceedings. — Payment of Dividends. — Demand. — Necessity.*—A preferred stockholder was not required to demand an annulment of proceedings to redeem his stock, and to demand payment of dividends thereon, before bringing an action to cancel such proceedings and to require the corporation to pay dividends on his stock, where the corporation denied the rights of plaintiff as a stockholder at the time of the redemption proceedings, since the making of such demand would have been useless, and for that reason not required by either law or equity. p. 170.

From Marion Superior Court (A30) ; *Linn D. Hay,* Judge.

Action by Frank C. Ball against the Star Publishing Company. From the judgment rendered, defendant appeals, and plaintiff assigns cross-error. *Affirmed.*

*James W. Noel* and *Charles W. Miller,* for appellant.
*F. Winter,* for appellee.

TOWNSEND, J.—Appellee is the owner by mesne assignments of 1,775 shares of the preferred stock in appellant corporation. Appellant tried to redeem this stock. Appellee brought this suit to cancel its proceedings in that behalf, and to enjoin such redemption, and the sale of bonds incident thereto. He also asked for an accounting; and that appellant be required to declare and pay dividends on his stock. He obtained what he asked, except that he claims that the court should have given him $62,125 in dividends instead of $39,050. The court found the facts specially and stated seven conclusions of law thereon. Appellant excepted to each conclusion and assigns error. Appellee excepted to the sixth conclusion (dividends) and assigns cross-error.

On October 11, 1904, George F. McCulloch was the owner of three newspaper publishing companies: the In-

dianapolis Star Company, the Muncie Star Company, and the Terre Haute Star Company, Indiana corporations with an authorized capital stock respectively of $500,000, $250,000, and $300,000 par value. On that date he entered into a written agreement with Daniel G. Reid and John C. Shaffer to sell all the property of the three companies, in consideration that they would form a new publishing company, having $500,000 par value preferred stock, $500,000 par value common stock, and would give him $200,000 cash, all the preferred stock in the new corporation, and $100,000 of mortgage bonds of an authorized issue of $650,000. This agreement further provided that the preferred stock should be five per cent. noncumulative but should participate after five per cent. had been paid on the common stock, preferred stock not to have voting power; bonds to bear five per cent. payable semi-annually, to run not to exceed fifteen years from date of execution. Pursuant to this agreement, on October 25, 1904, appellant herein was organized under the manufacturing and mining act, and shortly thereafter took over all the property of the three publishing companies. The property taken over was free from debts, except $200,000 mortgage bonds against the property of the first company, which bonds were to be redeemed by $200,000 of the authorized issue of $650,000 mortgage bonds of the new company.

Since October 9, 1911, John C. Shaffer has been the owner of all of the common stock of appellant, and also at that time acquired all the notes of the company held by Daniel G. Reid, and $550,000 par value of the authorized issue of $650,000 par value mortgage bonds. That is to say, he has had absolute control of the business policies of the corporations, there being two other nominal directors, to each of whom he transferred one share of stock. In 1917 he undertook to redeem the

preferred stock of the company, whereupon appellee brought this suit.

The first question presented is whether the stock is redeemable during the existence of this corporation, whose term is fifty years.   So far as this ques-

1.   tion is concerned, the terms of the articles of incorporation are the same as the terms of the certificates.

The certificates provide:

"Equal non-cumulative dividends shall be paid on all outstanding shares of such preferred stock, from the date of their issue, at the rate of five (5) per centum per annum, payable quarterly on the first days of June, September, December and March, in each year, when earned and declared out of the funds of the company available therefor, and no dividends shall be paid upon any of the shares of said common stock, or upon any shares of preferred stock, not authorized by the articles of association of the company, to which reference is made for authority for the issue of this stock and the nature and extent of its preference, until full payment has been made of all dividends declared upon the outstanding shares of preferred stock authorized by such articles of association; and in addition to said non-cumulative dividends at the rate of five (5) per centum per annum, after a non-cumulative dividend of five (5) per centum shall have been paid in or for any one year to the holders of common stock, the same further pro rata dividends shall be paid on all outstanding shares of preferred stock as shall be paid in or for such year to the holders of common stock; and, in any application which shall be made of the funds or other assets of the company to the *redemption* or *repayment* of its shares of capital stock, all outstanding shares of such preferred stock shall be fully *redeemed* or *repaid at* not exceeding the par value thereof, and all unpaid declared dividends, in priority to the *redemption* or *repayment,* in whole or in part, of any of the shares of the common stock of said company, or of the preferred stock of said company, not authorized by said articles of association."   (Our italics.)

Now it is the contention of appellant that because of the italicized words "redemption," "repayment," "redeemed," "repaid," this preferred stock is redeemable at the option of the company.

Our statute on the subject of preferred stock provides: "It shall be subject to redemption at not less than par at such *time* or *times* and upon such *terms* and *conditions* as shall be expressed in the certificates thereof," etc. §5096 Burns 1914, Acts 1903 p. 220. (Our italics.)

It will be observed that the language of the certificate is: "In any application which shall be made of the funds or other assets of the company to the redemption or repayment of its shares of capital stock, all outstanding shares of such preferred stock shall be fully redeemed or repaid at not exceeding the par value thereof, and all unpaid declared dividends, in priority to the redemption or repayment, in whole or in part, of any of the shares of the common stock of said company, or of the preferred stock of said company, not authorized by said articles of association."

It may be conceded that the words "redemption" and "repayment" are inapt words, but they mean, in the context of this certificate, no more than the manner of application of the funds and assets of the company to the payment of the capital stock on the final dissolution of the corporation, or àny intermediate dissolution because of insolvency. The language in the certificate, together with the language in the statute, directing that the time for redemption shall be fixed, does not warrant the construction that appellant corporation had the right to redeem its preferred stock at its option.

Appellant contends that a corporation has the inherent right to redeem its capital stock, and to sustain this contention authorities are cited in which it is shown that there was express statutory

provision for such retirement, or that there was purchase and retirement by agreement. In the absence of express statutory authority from the state, a corporation has no right to increase or reduce the amount of its capital stock, unless such increase or reduction is authorized by its charter. 1 Cook, Corporations (7th ed.) §281; 10 Cyc 538; *McCann* v. *First National Bank* (1887), 112 Ind. 354, 359, 14 N. E. 251; *Ferris* v. *Ludlow* (1856), 7 Ind. 517; *Scovill* v. *Thayer* (1881), 105 U. S. 143, 149.

Appellant further contends that if the language of the certificate and the statute construed together does not authorize redemption and retirement at the option of the appellant, then there is such ambiguity in the certificate as would authorize parol evidence. Appellant offered the preliminary conversations and negotiations which led to the execution of the contract with McCulloch. The court correctly excluded this evidence. The contract expressed in this certificate and in the articles of incorporation is like any other contract, not subject to parol modification by any preliminary negotiations or conversations concerning the same.

Appellant also contends that under §5092 Burns 1914, 1 R. S. 1852 p. 358, the common stockholders had the power by vote to reduce the capital stock of this corporation by retiring all of the preferred stock without the consent of such preferred stockholders. This is §12 of an act of 1852 (1 R. S. 1852 p. 358), which has to do entirely with common stock in manufacturing and mining companies. It cannot be carried over to modify or affect the rights of preferred stockholders in such companies under the act of 1893, Acts 1893 p. 162, in the manner attempted here, at least —if at all.

The trial court required appellant to pay a five per

cent. preferred dividend in each of the years 1916, 1917 and 1918, and a participating dividend of three and one-half per cent. in each of the years 1916 and 1918. Now appellant contends that this is error, for the reason that no more than eight per cent. on preferred stock in any one year is allowed by the statute. The language of §5096 Burns 1914, Acts 1903 p. 220, is: "Said company shall be bound to pay thereon such quarterly, semiannual or annual sum or dividends as may be expressed in the certificates, but not to exceed in all eight per cent. per annum, before any dividend shall be set aside or paid on the common stock of such company," etc.

Appellant's exact contention is that this provision is analogous to the usury statute and was intended to be a limitation upon the amount of interest paid on preferred stock in any one year. This contention fails at the very start, for the reason that a preferred stockholder is not a creditor who has loaned money to the corporation. It fails in the second place because the language in the statute is plain and not open to construction. It means just what it says, that no more than eight per cent. shall be paid upon the preferred stock, *before* a dividend is paid on the common stock. After dividends are paid on the common, preferred stock may participate in dividends to any amount. The preferred stockholder is as much a party to this business venture as the common stockholder, and is entitled to all the rights of the common stockholder, except as modified by statute and contract.

John C. Shaffer, who owns all of the common stock of appellant, has been actively engaged with the affairs of the company from the time of its organization to the present. He negotiated the contract with McCulloch. He organized appellant corporation. He was president and manager from 1904 to 1906.

From 1906 to 1908 one McCormick was president and manager. On December 31, 1907, the net losses of appellant were $134,241.94. In April, 1908, this deficit had been reduced to $101,945.44. On this latter date appellant was placed in the hands of a receiver by the circuit court of the United States for the district of Indiana. This was at the instance of Daniel G. Reid, who held past due notes of appellant. The business of appellant was carried on by this receiver until October, 1911. Under the management of the receiver the losses were made up, $42,753.77 was put into betterments, $180,000 of the bonded indebtedness was paid. When the receiver was discharged, he turned over to the corporation $175,147.89 cash, besides accounts and bills receivable. At this time John C. Shaffer had acquired and owned all the common stock, and all of the outstanding bonds of the corporation. From 1908 to the present time the business of appellant corporation has been prosperous. From 1911 to and including 1918, appellant could have paid dividends on the first day of March, June, September, and December, at the rate of five per cent. per annum on its shares of preferred capital stock, without depleting its cash assets, impairing its solvency, injuring its business or the rights of its shareholders. In that time appellant has retired all but $63,000 worth of its outstanding bonded indebtedness. These bonds were not due until November 1, 1919. Appellee and his brothers, who own $487,000 par value of the preferred stock, approved this payment of the bonds. The first thirty bonds retired after Mr. Shaffer took possession in 1911 were canceled. The next $342,000 par value of bonds paid were not canceled. In April, 1917, these paid, uncanceled bonds were hypothecated at a bank to raise $342,000 in money, and along with this sum was placed $145,000 of cash earnings of appellant, to make a total of $487,000, with which to re-

deem the outstanding preferred stock at par, without paying any dividends thereon. This money was used to make a tender to the preferred stockholders. No dividends were ever paid on this preferred stock until compelled by the court in this suit, by the judgment of July 5, 1919. In the spring of 1917, John C. Shaffer paid himself a five per cent. dividend on common stock out of the earnings of the first quarter. In November of that year he increased his salary from $12,000 to $18,000 per annum, and directed it to be paid at the rate of $1,500 per month from May 1, 1917. In 1918 he paid himself a five per cent dividend on his common stock, and in November of that year paid himself an additional three and one-half per cent. dividend. In 1917 he also borrowed for his own personal use $75,000 from appellant corporation. He invested $90,742.42 of the earnings of appellant in Liberty Bonds. In the spring of 1917, the appellant corporation passed a resolution for a new issue of $750,000 par value of five per cent bonds, to run fifteen years. This was without the written consent of the preferred stockholders. At the time appellant took over the property of the three old companies, in 1904, a tripartite agreement was entered into between the three old companies and the new company, in which the value of the assets turned over to the new company was agreed to be $1,650,000. That is to say, par value of the entire capital stock, common and preferred, and the proposed authorized bonded indebtedness of $650,000. Now it is the contention of appellant that there is a deficit in the capital stock of the corporation, because this property was taken in at an overvaluation. Appellant claims that there was $883,000 deficit at the organization. Well, Shaffer helped value the assets at that time. If this contention is correct, then the common stock and the larger part of the bonded indebtedness is water. So appellant is complaining that

the court erred in overruling his motion for a new trial, in that it failed to find as appellant's counsel indicates. One thing is quite apparent, that the assets of the three corporations were paid for by $500,000 preferred stock of appellant corporation, $200,000 cash and $100,000 par value of the mortgage bonds. Thus it will be seen that if anybody is surrounded by water, it is the owner of the common stock and the one who has succeeded in getting the bulk of the mortgage indebtedness paid to himself since 1911. It must be remembered that this is not a controversy between a creditor of this corporation and the corporation on the question of paying dividends, but it is a controversy between the owner of preferred five per cent. noncumulative stock with one who owns all of the common stock and who has acquired all of the mortgage bonds which have been paid. In this same connection appellant is complaining that the court put too great a value upon the intangibles of appellant corporation; that they should not have been considered in making up any deficit; but that such intangibles should be considered worthless. It is sufficient answer to this to say that the values placed upon the intangibles by the court are in accord with the values placed upon them by the appellant corporation which is, under the circumstances of this case, John C. Shaffer. We think it is a matter of quite common knowledge that intangibles make up a goodly part of the value of a newspaper publishing company when it is a going concern. Certainly the trial court made no mistake in granting to the preferred stockholder as much as John C. Shaffer gave himself in 1917 and 1918.

In view of the fact that $145,000 of the earnings of 1916 were placed in the bank in 1917, along with the $342,000 par value of uncanceled bonds, to raise

8.  enough money to redeem this preferred stock, the court did not make a mistake in compelling an eight

and one-half per cent. dividend in 1916. The serious question in our minds is whether the court should not have declared a greater dividend, and whether appellee should not succeed on his cross-error. But at this point we are met with a record which gives us no finding as to the necessary working capital for the year 1918; nor, in fact, for any year. On this point too we have the contention of appellant that the court erred in failing to find the necessary working capital. We have examined the evidence on the subject and it is far from satisfactory. But so far as appellant's contention is concerned, if the court had found the maximum shown by evidence, it would not affect the dividends that have been declared by the court. Appellant may be fortunate in not having a finding of the trial court on this subject. The court was correct in granting $39,050 in dividends to appellee. In the absence of an express finding as to working capital required, we cannot say that the court was incorrect in failing to give appellee $62,125 in dividends.

At the time of the suit in the circuit court of the United States for the district of Indiana, George F. McCulloch intervened and was claiming, as we suppose from the decision of the circuit court of appeals, that as a preferred stockholder he was a creditor of this corporation. (See *Shaffer* v. *McCulloch* (1911), 192 Fed. 801.) Now it is appellant's contention that it should have been permitted in the instant case to introduce the pleadings and briefs of McCulloch in that cause, to determine and affect matters here litigated. Such evidence is hearsay. Appellee was not a party to that suit. McCulloch's very contention in that suit was an error in law. The decision of the circuit court of appeals in that case is authority for what we have heretofore indicated, namely, that a preferred stockholder is not a creditor of a corporation but is a

party to the business venture, along with the common stockholder, and his rights are the same as those of the common stockholder, except as limited by contract and by statute.

Appellant claims that appellee waived his right to dividends by acquiescing in the use of the net earnings and profits of the company in paying the mortgage debt. In this appellant is in error. It merely suspended the appellee's right until there was an excess of earnings over the amounts reasonably required to be expended for that purpose. It is nowhere made to appear from the special findings that appellant was in any way prejudiced or misled by the conduct of appellee.

It is further claimed by appellant that a demand for the annulment of the redemption proceedings and the payment of dividends should have been made by appellee. This contention is erroneous, for the reason that the corporation was denying in the spring of 1917, the rights of appellee as a stockholder in the corporation, and his suit is to correct the wrongs done him by the corporation in attempting to deprive him of his position and his rights as a stockholder. While the findings of the court show that appellee and his brothers acquiesced in the retirement of the bonded indebtedness and considered it sound business policy, there is no finding that indicates that at the end of this business policy they were acquiescing in the retirement of their stock and the complete destruction of their standing as stockholders. We know of no rule of law or equity that requires the doing of an idle and useless thing.

The court was correct in holding that the preferred stock was not redeemable, in declaring dividends thereon, in issuing a mandatory injunction to take up and cancel the $342,000 of bonds, and in perpetually enjoin-

ing appellant from a further issuance of bonds without the written consent of the preferred stockholders.

We have in view the rule that: "It is largely a matter of discretion with the board of directors as to whether they will use the net profits for a dividend or will use them in the business of the company, although there is a limit to this discretion, and the courts will not allow the directors to use their power oppressively by refusing to declare dividends where the net profits and the character and conditions of the business clearly warrant it." 1 Cook, Corporations (7th ed.) §272.

We also have in view the principle that, "The courts are inclined to scan closely a refusal to declare dividends where there are net profits and where the preferred stock is non-cumulative." 1 Cook, Corporations (7th ed.) §272.

The judgment of the trial court is affirmed.