**BARCLAY et al. v. WABASH RY. CO. et al.***

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 25.

*Certiorari granted 49 S. Ct. 265, 73 L. Ed. —.

L. Hand, Circuit Judge, dissenting.

Wm. R. Begg, of New York City, and Joseph S. Clark and Ellis Ames Ballard, both of Philadelphia, Pa. (Hornblower, Miller & Garrison, of New York City, and Clark, Clark, McCarthy & Wagner and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., of counsel), for appellants.

Charles E. Hughes, Winslow S. Pierce, and F. C. Nicodemus, Jr., all of New York City, for respondent Wabash Ry. Co.

Charles E. Hughes, of New York City, for respondents Hollins, Austin, Leslie, and Krapp.

Davis, Wagner & Heater, of New York City (Arnold L. Davis, of New York City, of counsel), for respondent Dickson.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. Appellants are owners of preferred stock class A, the appellees Myron S. Hall, H. W. Cohu, and LaMotte T. Cohu are owners of preferred stock class B, and the appellees Gerald V. Hollins, Shirley P. Austin, George R. Leslie, Earl Krapp, and William Fraser Dickson own common stock of the appellee Wabash Railway Company, an Indiana corporation organized October 22, 1915. On May 1, 1927, it had outstanding 690,000 shares of $100 par value, preferred stock A, and 24,000 shares, par value $100, preferred stock B, and 665,000 shares of common stock, par value $100. The certificate of incorporation provided:

"The five per cent. profit sharing preferred stock A shall be entitled to receive preferential dividends in each fiscal year up to the amount of five per cent. before any dividends shall be paid upon any other stock of this corporation, but such dividends on the five per cent. profit sharing preferred A stock shall be noncumulative."

The certificates of preferred stock A made promise to the holders thereof of the same obligations. No dividend was paid from October, 1913, until January 29, 1917, on which day and quarterly thereafter a dividend of 1 per cent. on stock A was paid up to and including April 30, 1918. From that date to May 25, 1925, no dividends were paid on this stock. On May 25, 1925, and quarterly thereafter, 1¼ per cent. was paid. The complaint alleged: That the earnings for each fiscal year available for dividends on stock A, on which the company declared no dividends or declared a dividend of less than 5 per cent., were retained by the company, carried to its surplus account, and used for additional working capital or betterments. Further, that during the period from its organization to May 25, 1925, the aggregate of preferential dividends of 5 per cent. in each fiscal year upon stock A, to the extent that the railroad company had in each fiscal year during said period net earnings available for payment of such dividends, amounted to $16,000,000 in excess of the dividends declared and paid by it on stock A, and it is alleged all of this sum, available for such dividends, was carried to the surplus of the railway company and used for additional working capital and other corporate purposes. That on April 1, 1927, the railway company paid a dividend of 5 per cent. on its preferred stock B out of the earnings of 1926, or some preceding year, and that it now threatens to pay regular dividends upon its preferred stock B and its common stock without first making good and paying out of the surplus full preferential dividends of 5 per cent. in each fiscal year upon stock A from the time of its organization to the extent that such preferential dividends were earned in each fiscal year, but were not paid in full, thereby depriving the stockholders of stock A of the dividend rights inhering in said stock A, and diverting from stock A net earnings available for such preferential dividends thereon which were not paid.

The answer alleges: That the entire surplus of all periods since the incorporation of the railway company, not distributed to stockholders and not reserved for working capital or necessary corporate requirements, has been actually appropriated to and is now represented by fixed and permanent improvements and additions to the property. That

this was necessary to enable it to carry on its corporate purposes, and that no part of the surplus represented by cash or earnings has been available for dividends. It admits, however, that all sums of over $16,000,000 were carried to the credit of the surplus account of the railway company, and still form a part of the present credit to that account. It is admitted that the certificate of incorporation is as alleged by the plaintiffs, and that dividends were paid on preferred stock A to the extent alleged.

The relief sought by the appellant Barclay is for an interlocutory injunction to restrain the threatened payment of the dividend on stock B, declared after the bill was filed, payable February 6, 1928, out of earnings of 1927; and also by the appellants to enjoin the payment of dividends on common stock until it shall first have paid the preferential dividends which have been earned in prior years and which have not been paid on stock A. By stipulation it is agreed that the interlocutory judgment should be deemed and treated as having resulted from a motion for a final decree on the bill and answers filed, and the court so treated it, dismissing the bill on the merits. From that decree this appeal is prosecuted.

Recognizing that no dividend, other than in liquidation, may be paid except out of earnings, and that preferred B and common stockholders may receive dividends only after the preferential dividends given class A stockholders are paid, the parties differ as to the construction to be placed upon the terms of the preferential contract of stock A. What is the intent and extent of this dividend preference we must consider. It is not disputed but that class A receives preferential dividends in each fiscal year up to the amount of 5 per cent. It must be paid "before any dividend shall be paid upon any other stock of this corporation." At once the issue is presented as to what is meant by "shall be noncumulative."

Appellants' argument is that it means that the dividends each year are dependent upon the earnings of the year; that they, as preferred A stockholders, are not entitled to receive dividends for any year unless they are earned in the year. Admitting that in past years an aggregate of over $16,000,000 was earned upon its preferred stock, taking the annual earnings year by year, which might have been paid as preferred A dividends, the board of directors, in the exercise of its discretion, used earnings to pay the cost of additions and improvements to the property and to increase its working capital,

and the argument now is that, because of this, preferred A stockholders have lost all their right to the dividends for the years unpaid. That future earnings may not be appropriated by the board to pay dividends for the years when, although there were profits, no dividend on this class of stock has been declared, is now asserted by the appellees.

■ Cumulative dividends must be paid, regardless of the year in which they are earned, while noncumulative dividends paid any year are dependent upon the earnings of that year. If not earned in the particular year, the stockholders are not entitled to dividends for that year, and the deficiency cannot be made up out of surplus earnings of a subsequent year. But the appellants' argument is that, if dividends were earned during any particular year, although not declared by the board of directors, and even though earnings were used for improvements and betterments, if, in a subsequent year, there is a profit, common stockholders, under the terms of this certificate, may not share in that profit, unless and until dividends have been paid on preferred stock A up to the amount of the earnings of the particular year, but not to exceed 5 per cent. as provided.

Preferred A stock received a dividend credit to the extent of the earnings each year, not to exceed 5 per cent. It secured no dividend credit whatever in any year where there were no earnings. A board of directors may deem it unwise to declare noncumulative dividends at the end of each year, or at any particular time until conditions are favorable for dividend distribution. But in the meantime the dividend credit in favor of the preferred stockholders increases to the extent of the earnings of each year, and against the dividend credit charges are made to the extent that the preferred dividends are declared and paid. The surplus account to the extent of this dividend credit in favor of the preferred class A is marked, in a sense, in favor of such stockholders. It cannot be used for the payment of dividends on any stock junior to preferred A, until that credit has been satisfied.

■ The reported cases, considering this question, are (1) cases in which the right of the board to pay earned, but withheld noncumulative preferred dividends for prior years, without reference to the fund from which payment was made; (2) cases in which the right of the board to refuse payment of earned, but withheld noncumulative preferred dividends upon demand by the preferred stockholders was presented; and (3) cases in which the right to enjoin payment of divi-

dends on junior stocks until after payment of earned, but withheld, noncumulative preferred dividends for prior years was presented. The right of the board to declare noncumulative preferred dividends for prior years is not necessarily presented here. But on April 1, 1927, the board did declare a dividend for the year 1926 on preferred B stock. The certificate of class A stock makes such stock entitled to receive preferential dividends "before any dividends shall be paid upon any other stock." This language would indicate that the board of directors could not declare dividends on B stock until A stock was fully satisfied as to dividends.

Wood v. Lary, 47 Hun (N. Y.) 550, presented the question of whether a board had the right to pay noncumulative dividends at the end of a four-year period during which the dividends were earned year by year and to pay such dividends by issuing bonds of the company. The contract provided, as to preferred stockholders, that they were "entitled to dividends, not to exceed 6 per cent., payable semi-annually, not cumulative, whenever in any year the net earnings, after payment of all interest charges, shall suffice for the payment thereof." No preferential dividends were paid for the years in question, but during the period dividends were earned and the money was expended for construction account. After the four years, the board met and declared a dividend upon the noncumulative preferred stock, payable in bonds. The common stockholders objected, alleging that the preferred dividends were noncumulative, and the directors had no right to declare preferred dividends for these prior years. The court held, however, referring to the phraseology of the certificate, that, whether or not the directors declared a dividend of these profits earned in each year, the stockholders were entitled to them, and their rights therein became fixed, and, even if the directors made no division thereof, the rights still existed and could not be taken away; that the subsequent compliance by the directors with the terms of the contract in the declaration of a dividend did not infringe upon the provision of the certificate which made the dividends noncumulative. From a very well reasoned opinion, it would appear that if the board, at the end of the four-year period, had undertaken to pay common dividends without first paying and satisfying these earned, but unpaid and noncumulative, preferred dividends, the preferred stockholders would have had the right to enjoin the payment of such common dividends. It is also noteworthy that at the time of the passage of the dividend resolution, and the execution of the mortgage and issue of the bonds, the amount of the net earnings was not in hand in cash, but was in the hands of the corporation as new property, in addition to and in excess of the property received by it at the time of the reorganization.

In Bassett v. U. S. Cast Iron Pipe & Foundry Co., 74 N. J. Eq. 668, 70 A. 929, on appeal 75 N. J. Eq. 539, 73 A. 514, and Moran v. U. S. Cast Iron Pipe & Foundry Co., 95 N. J. Eq. 389, 123 A. 546, affirmed in 96 N. J. Eq. 698, 126 A. 329, the board declared dividends on its noncumulative preferred stock for prior years in which such dividends had been earned, and a common stockholder sued to enjoin payment, and the right of the board to declare and pay these preferred dividends was sustained, even against the objection that they were designated "noncumulative." In Collins v. Portland Electric Power Co. (C. C. A.) 12 F.(2d) 671, 48 A. L. R. 73, where the board declared dividends upon its noncumulative preferred stock for prior years, which had been earned in those years, the common stockholders' suit was to enjoin the payment because the preferred stock was noncumulative, and it was declared that the board had such power. In N. Y., Lake Erie & W. R. Co. v. Nickals, 119 U. S. 296, 7 S. Ct. 209, 30 L. Ed. 363, the Supreme Court considered dividend rights of preferred stockholders, whose dividends were noncumulative, and referred to noncumulative dividends as such because they were dependent upon the profits of each particular year, and were not to be fastened upon the profits of the succeeding year.

In Staples v. Eastern Photographic Materials Co., [1896] L. R. 2 Ch. Div. 303, a stockholder's contract read: "The holders of the preference shares shall be entitled out of the net profits of each year to a preference dividend at the rate of 10 per cent. per annum on the amount for the time being paid or deemed to be paid up thereon. After payment of such preferential dividend the holder of ordinary shares shall be entitled to a like dividend at the rate of 10 per cent. per annum on the amount paid on each ordinary share. Subject as aforesaid, the preference and ordinary shares shall rank equally for dividend."

Lindley, L. J., said: "Are they [the preferred holders] to have cumulative dividends, or are they to have dividends only according to the share of the profits in each year in which there are profits?" and again: "It appears to me that the reference of the dividend to the profits of each year is most

marked." Kay, L. J., in his opinion, said: "I do not find any provision that the holders of preferred shares are to be entitled in any event to a dividend per annum at the rate of 10 per cent. I can only find an indication that out of the profits of each that shall be their share of those profits."

It is apparent that Kay, L. J., felt that, if there were profits in each year up to the 10 per cent. and the dividends up to that amount among the preferred were not declared in those years, it would have to be made up before any other dividends would be paid.

■ In the second class are found preferred stockholders who, in order to sustain a demand for payment of their dividends, are held to a showing that they are entitled to receive the dividends demanded. If the dividends of a prior year are cumulative, delay in the declaration and payment is of no importance; if noncumulative, the company has a good defense against any demand, if not earned. In the absence of an abuse of discretion, the board of directors cannot be forced to pay dividends.

In N. Y., L. E. & W. R. Co. v. Nickals, supra, preferred stockholders demanded the payment of their noncumulative stock dividends, which had been earned in a prior year under a contract, and this demand was denied. The contract provided for "preferred stock * * * entitling the holders to noncumulative dividends, at the rate of six per cent. per annum, in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors." The Supreme Court held that under this contract the dividends were payable as declared by the board of directors. It pointed out that the evidence showed that the profits for the year were applied to the objects which were legitimate and proper, and as the condition of the company was not such as to make the declaration of the dividend a duty on the part of the directors, there was no basis for the claim to such dividend.

Dent v. London Tramways Co. (1880) 16 Ch. Div. 344, referred to in the Nickals Case, was a suit by preferred stockholders to secure a declaration that they were entitled to their dividends earned in prior years on a certificate which granted a "preferential dividend of 6 per cent. per annum over the present shares of the company dependent upon the profits of the particular year only." The company claimed the right to further postpone the payment of the preferred dividends, although they had been earned, and it was held that they must be paid, even though they were noncumulative dividends earned in prior years. The company had used the earnings to pay dividends on ordinary shares in place of using them for betterments and improvements.

In Burk v. Ottawa Gas & Electric Co., 87 Kan. 6, 123 P. 857, Ann. Cas. 1913D, 772, the action was by preferred stockholders against a public utilities corporation and its directors to require an accounting and a decree ordering the directors to declare such dividends from the net profits of the business as should have been declared since January 1, 1906. The certificate of stock provided: "The preferred stock shall carry a six per cent. per annum preferred, noncumulative dividend, payable semiannually on the first days of July and January of each year after January 1, 1906, out of the net profits of the preceding fiscal year, and a pro tanto dividend if such dividend fall short of 6 per cent." In each year from 1906 to 1910 the company made profits which were put into extensions of plant and properties. The trial court found the extensions were "necessary," but did not specifically find that they were necessary for a public utility company to perform its obligations to the public.

Reversed on appeal, the trial court was ordered to take further proof. Speaking of the contract, the court said: "The fair interpretation of the contract between the corporation and the holder of this stock is that if in any year net profits are earned, a dividend is to be declared. To hold that the board of directors, that is to say, the corporation, has a discretion to declare or not to declare a dividend when it has funds that it can use for the purpose is to hold that one of the parties to a contract has the option to pay something to the other or not, at its own election, since, if the dividend is not declared at the end of the year, the benefits of the accumulated profits are practically lost to these stockholders. Such a construction should be avoided if any other is reasonably open, because it would result in temptation to unfair dealing."

Appellees argue, however, that this case is to be distinguished, because of the phrase of the certificate "out of the net profits of the preceding fiscal year" constituted a guaranteed dividend, and say that the words are absent in the instant case. The earnings were put into the plant for extensions, but the court nevertheless granted relief.

In Star Publishing Co. v. Ball, 192 Ind. 158, 134 N. E. 285, which was a suit by a preferred stockholder to enjoin a bond issue and for a decree requiring payment of dividends

on stock, the certificate provided: "Equal noncumulative dividends shall be paid on all outstanding shares of such preferred stock, * *  at the rate of five (5) per centum per annum, payable quarterly  * *  in each year, when earned and declared out of the funds of the company available therefor, and no dividends shall be paid upon any of the shares of said common stock, * * * until full payment has been made of all dividends declared upon the outstanding shares of preferred stock authorized by such articles of association."

Between 1911 and 1918, the affairs of the company were in such condition that it could have paid 5 per cent. preferred dividends in each of the years, but no dividends were paid until the company was compelled to by the action of the trial court. In affirming the judgment below, the court said: "The serious question in our minds is whether the court should not have declared a greater dividend, and whether appellee should not succeed on his cross-error. But at this point we are met with a record which gives us no finding as to the necessary working capital for the year 1918; nor, in fact for any year." Further: "Appellant claims that appellee waived his right to dividends by acquiescing in the use of the net earnings and profits of the company in paying the mortgage debt. In this appellant is in error. It merely suspended the appellee's right until there was an excess of earnings over the amounts reasonably required to be expended for that purpose."

Thus the claims of the preferred stockholders were sustained where the dividends were noncumulative. The application of the proportion of the earnings, which might have been used for payment of preferred dividends, to pay the debts of the company, operated merely as a suspension or postponement of the right of the preferred stockholders to receive their postponed dividends.

With this understanding of "noncumulative," the stockholders of preferred A have not lost their preference dividend rights for prior years, and are entitled to have them recognized, and the dividend paid, before any dividend may be paid on the junior stocks. In Moran v. U. S. Cast Iron Pipe & Foundry Co., 95 N. J. Eq. 389, 123 A. 546; Bassett v. U. S. Cast Iron Pipe & Foundry Co., 74 N. J. Eq. 668, 70 A. 929, on appeal in 75 N. J. Eq. 539, 73 A. 514, and Day v. U. S. Cast Iron Pipe & Foundry Co., 95 N. J. Eq. 389, 123 A. 546, affirmed 96 N. J. Eq. 736, 126 A. 302, the New Jersey courts dealt with the question of noncumulative dividends. On a certificate which provided that "the preferred stock shall be entitled out of any and all surplus net profits, whenever declared by the board of directors, to noncumulative dividends at a rate not to exceed 7 per cent. per annum for the fiscal year beginning on the 1st day of June, 1899, and for each and every other fiscal year thereafter, payable in preference and priority to any payment of any dividend on the common stock for such fiscal year," it was held that the profits to the extent that they were earned in the prior years belong primarily to the preferred stockholders and, in distributing them as dividends, no restriction was imposed upon the board, either as to time or occasion. And, once having decided to divide the profits, duty supplants discretion and it becomes incumbent upon the directors to discharge the company's obligation to pay the fixed yearly preferred dividends, and this before any dividends shall be paid upon the common stock. As to noncumulative dividends, they are to be paid out of the profits of any fiscal year, not more than the percentage fixed by the charter to be paid on such stock for each year. But that does not prohibit the company, after having paid the fixed yearly dividend, from, in the same year, declaring and paying additional dividends out of the profits earned in prior years applicable to dividends for such years, and which, but for holding them in reserve for economic reasons, would have been distributed in dividends in those years; that such profits belong primarily to the preferred stockholders, and the directors are in no wise restricted, either as to amount, time, or occasion when the distribution shall be made.

In Collins v. Portland Electric Power Co., supra, the board of directors declared three dividends in 1925 on noncumulative second preferred stock, the first for the year ending December 31, 1920, the second for the year ending December 31, 1921, and the third for the year ending December 31, 1923, and also a dividend upon common stock for the year ending December 31, 1924. The second preferred stockholders sued to enjoin the payment of common dividends, because of nonpayment of the second preferred dividends for prior years. The defense contended that the second preferred dividend stockholders for prior years had lost their rights to dividends, because, being noncumulative, they were not declared within the year, and also because, under the contract, the board was authorized to pay common dividends, even though earned preferred dividends for prior years still remained unpaid. The common stockholders filed a bill in the second case to

enjoin payment of preferred stockholders, on the ground that their dividends for prior years were lost because not declared within the several years respectively. The contract provided that: "The dividend upon the prior preference stock of every series and the first preferred stock shall be cumulative, but accumulations of dividends shall not bear interest. The holders of the second preferred stock are entitled to receive, when and as declared, out of the surplus or net profits of the company, dividends at the rate of 6 per cent. per annum, payable as the board of directors may determine, before any dividend shall be set apart for or paid upon the common stock. The dividends upon the second preferred stock shall not be cumulative."

It was said on appeal to the Ninth Circuit Court of Appeals that the "controversy between the parties on this appeal is narrowed to the issue whether dividends upon the second preferred stock are lost if not declared and paid within the year, notwithstanding that there may have been earnings sufficient to pay all or part thereof, or whether the fact that the earnings were made gave to the holders of the second preferred stock a positive right to dividends out of the said earnings, with the result that the directors might lawfully declare and pay such dividends in subsequent years." And it was held that the directors, having declared dividends for the years 1921 and 1923, recognized that the dividends ought to have been paid in those years, and that the condition of the company's property and affairs as a whole justified their action in declaring such dividends.

In Continental Ins. Co. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871, referred to by appellees, the court considered a suit by common stockholders, who, in the distribution of assets on the dissolution of the company, demanded an award in their favor of an amount equal to dividends which the board might have declared upon the common stock in prior years, and payment of such award upon any capital distribution to the preferred stockholders. The board of directors had capitalized these dividends. The court held that the common stockholders could not force the board to declare and pay common dividends for prior years, even though the dividends had been earned, if the board, in the exercise of its proper discretion, failed to declare and pay such dividends. The right of the board to pay common dividends, which had been earned in prior years, at any time before dissolution, was recognized, but the court held that undivided earnings are to be capitalized and distributed on liquidation, un-

less the board of directors has applied them as dividends. No other question of dividend priority was presented for consideration.

We are also referred to Norwich Water Co. v. Southern Ry. Co., 11 Va. Law Reg. (N. S.) 203, where the chancellor held, subject to certain limitations, that a noncumulative preferred stock dividend for any particular year is lost to the preferred stockholders, if not declared within the year. He pointed out that a failure to declare dividends within the year results in loss to the preferred stockholders of their right to demand that dividend, but not a loss to the directors of their right to pay it. Of course, stockholders never had the right to demand payment within the year, and the stockholders in the Norwich Case never had such right to demand. The contract provided for the "noncumulative dividends * * * from the net profits, * * * and only when and as such board shall declare dividends therefrom." The board could postpone the declaration until after the termination of the year. The chancellor held that the characterization "noncumulative" did not apply, if, under the contract, the preferred stockholders have the absolute right to their dividends, and that an obligation is imposed upon the company to pay it. He declined to hold that there was an absolute right or obligation under the particular contract. That determination is undoubtedly influenced by the terms of the contract, which the chancellor considered, which provided for priority in any payment of dividends from the net profits of the company, "as such shall be fixed and determined by the board of directors, and only when and as such board shall declare dividends therefrom; but, notwithstanding the preference hereby declared, if, after providing for the payment of dividends for any fiscal year on the preferred stock outstanding in such year, there shall remain a surplus of net profits of such year, the board of directors may declare and pay dividends upon any other stock of the Company for such year out of such surplus net profits."

Even though it be thought that the decisions on which appellants rely have been controlled by the particular wording of corporate charters and state statutes, yet it can hardly be maintained that any decision of a court of last resort is definitely against appellant's claim. Continental Ins. Co. v. United States, supra, seems to be regarded by appellees as supporting their position. But that is not so, for the reasons already stated.

It is said that the right to declare and

pay dividends to the noncumulative preferred stock rested with the directors, and no longer exists, because the earnings of former years, which might have been paid to the preferred stockholders, have become capital. But where there is arbitrary conduct by directors in withholding payment of dividends, relief may be had against it in a court of equity. If all stockholders may have relief where dividends are arbitrarily withheld, we cannot see why noncumulative stockholders do not possess similar equities, where earnings which might have been applied to dividends on noncumulative preferred stock have been placed in the capital account and retained there, and subsequent earnings not needed for capital are to be distributed to one class of stockholders or other.

Preferred stockholders are not in all respects joint adventurers with common stockholders. Even if having a vote, the control of the corporation is nearly always in the hands of the common stockholders, and the directors are thus really chosen by the latter.

It is manifest that, if directors, in effect selected by the common stockholders, be given almost unlimited power to retain in the capital account earnings which might have been voted to noncumulative preferred stockholders, and likewise the power to vote dividends to the common stock from earnings in subsequent years, without recognition of any deferred prior right of the preferred stockholders, the common stock really secures priority over the preferred stock to the extent of the earnings which have been appropriated for capital. The power to bring about such a result subjects directors to an undesirable temptation to favor the common stockholders, who ordinarily control the corporation, and is not required by the terms of the corporate charter or by judicial authority. Recognition of a deferred credit seems to a majority of the court to be based on considerations of good public policy, as well as sound equitable principles. See article in 23 Columbia Law Review, p. 357, on "Noncumulative Preferred Stock," by A. A. Berle, Jr., and note in volume 34 of the Yale Law Journal, at page 657, on "The Rights of Noncumulative Preferred Stockholders in Undivided Profits."

The failure of the board of directors to declare preferred A dividends and the appropriation of the earnings with which they might have been paid to increase the working capital, and to pay for construction of extensions and additions, we hold resulted only in granting a dividend credit which, at some postponed date, may be paid to preferred A stockholders as dividends under the terms of the contract. They are still entitled to receive such dividends, and the board may not pay dividends upon junior stocks until after these earned dividends of preferred A stock are first paid and satisfied.

Decree reversed.

L. HAND, Circuit Judge (dissenting). The relevant clause of the charter gives the plaintiffs "preferred dividends in each fiscal year up to the amount of five per cent.," and the case concerns only the earnings of a current year, not the distribution of accumulations carried over from earlier years. There were undeclared earnings in such years, but they are now in the form of track, equipment, and working capital, and in that form they will remain, for the directors do not mean to distribute any of the working capital, obviously the only part which they could. The words, "up to the amount of five per cent.," were prima facie used in limitation as well as in grant, and the question is whether the circumstances require us to import an exception. The occasion is that the earlier earnings could have been declared, had not the directors decided that the corporation needed the money for its general operations, a decision which nobody challenges.

If the directors proposed to reduce the working capital accumulated out of the past earnings, they would probably be obliged to declare as preferred dividends the amount so withdrawn. That was the situation in Bassett v. U. S. Cast Iron, etc., Co., 75 N. J. Eq. 539, 73 A. 514, and also in Collins v. Portland, etc., Co., 12 F.(2d) 671 (C. C. A. 9), 48 A. L. R. 73, as I understand the facts, although the report is not altogether clear. But in the case at bar the directors still need the working capital which they accumulated out of earlier earnings; the only way in which it can be considered to be distributed is by gratuitously marshaling the proposed common dividend against earlier earnings and using current earnings to make up the deficit so created. That I submit would be legerdemain.

Moreover, since there is no rational distinction between working capital and track and equipment, the result of our decision must be to establish a deferred credit of $16,000,000, which must be declared out of the earnings of later years before the common shares can get anything whatever. There is not the slightest reason to suppose that the preferred shares would have claimed anything of the sort, or that the common shares

would have yielded it if they had. Apparently in Day v. U. S. Cast Iron, etc., Co., 95 N. J. Eq. 389, 123 A. 546, the working capital was indeed not reduced, and the preferred shares were awarded some part of the earlier earnings, though even this is not entirely clear. But the case was decided by an evenly divided court, in which six out of the nine justices voted to deny the claim, and where every one supposed that the New Jersey statute was important, if not determinative. The case is scarcely authority for the position here taken.

Nor are those cases authority where the charter makes the preferred dividends depend only upon earnings. Wood v. Lary, 47 Hun (N. Y.) 550; Burk v. Ottawa, etc., Co., 87 Kan. 6, 123 P. 857, Ann. Cas. 1913D, 772. The directors have then no choice, and must declare the dividends in the year in which the earnings are made, or as soon as the shareholders demand them. Such cases are outside the general rule laid down in N. Y., L. E. & W. R. Co. v. Nickals, 119 U. S. 296, 7 S. Ct. 209, 30 L. Ed. 363. Again, the majority shareholders may have abused their powers, as in Star Pub. Co. v. Ball, 192 Ind. 158, 134 N. E. 285, where, moreover, the discussion of the preferred shareholders' rights to a larger dividend than that allowed by the lower court gives as much comfort to the appellees here as to the appellants. In the case at bar, both sides agree that the directors must declare the earnings as dividends before the shareholders can become entitled to them, and that their judgment was honestly exercised when they declined to declare them in the past.

What is there, then, which should induce us to ignore the limitation of the charter, that out of the earnings of any year the preferred dividends shall be limited to 5 per cent.? Nothing but the fact that in past years it was advisable, in the company's interest, to retain what, except for those interests, should have been declared. To such contingencies preferred shareholders are as subject as common; they accept them in the character of their investment. We must say that in some way the mere existence of earnings gives them a right, not immediate, indeed—for that would be too flagrant a disregard of the language—but as a kind of lien on subsequent earnings when these can be spared. That might be a good sort of investment, but how have they stipulated for it? They have agreed not to claim earnings as

such and to limit their rights upon the earnings of any given year. I can see no basis for the interpolation of this added right; it seems to me to violate the basic agreement. None of the considerations which apply to deferred dividends touch it at all; it is a mere gratuity.

The only decision in point, except Day v. U. S. Cast Iron, etc., Co., is Norwich Water Co. v. So. Ry. Co., 11 Va. Law. Reg. (N. S.) 203, in which, however, though the discussion bears out the view I take, the charter was such as of itself to compel the result. On the other hand, Continental Ins. Co. v. U. S., 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871, is not so foreign to the case as my brothers think. If prior earnings retain no earmarks upon dissolution, though they are then a part of the very funds distributed, it would seem that they should not create a lien upon subsequent earnings, which are no part of them, and which, indeed, result only in small measure from their use as capital.

Nor do I understand how any equities can be said to exist, except from some implied intent for which there is no warrant. The notion that preferred shareholders are weaker in bargaining power may or may not be true; I know too little of the facts. Prima facie they must be taken at their word, like other people, and, if any tenderness is due them, it should follow upon an inquiry which courts have no power to make. I agree that directors, who generally hold common shares, may be induced to starve the preferred shares in the hope of greater earnings from an increased capital, eventually taking form in greater common dividends, and though that is a somewhat remote motive, it may be real enough. But preferred shareholders, as well as common, accept the situation; the law has long advised them that their rights depend upon the judgment of men subject to just that possible bias; the language chosen implies that their action shall be a condition upon any dividends. Why we should distort that language against the possibility of a dereliction of duty, for which, though hard to prove, the law gives redress, I do not see. Courts must not be blind, but the correction of possible injustices may come at too high a price. Words are illusive enough at best, but, when all is said, they are the only means of communication we have. On the loyalty of their interpretation more in the end depends than on our power to right such wrongs as results from their inconsiderate use.